BURT *v.* LONG.

1. RECORD ON APPEAL—FRIVOLOUS ASSIGNMENTS OF ERROR.
   The practice of needlessly multiplying assignments of error is subject to criticism.

2. LOST LETTER—SECONDARY EVIDENCE.
   Where a witness testifies that he has not seen a certain letter since its receipt by him some 12 years previous, that his papers were afterwards destroyed by fire, except a few that he kept in a specified place, that he has searched for papers among those last mentioned, and that the one in question was not there, a sufficient foundation is laid for the introduction of parol evidence of the contents of the letter, although the witness further states that he has not made a search for that particular paper.

3. CROSS-EXAMINATION—DISCRETION OF TRIAL COURT.
   The action of the trial court in limiting the extent of the cross-examination upon an unimportant matter, on the ground that too much time was being occupied thereby, will not call for a reversal.

4. IMPEACHMENT—CONTENTS OF LETTER—HARMLESS ERROR.
   An impeaching question regarding the contents of a letter written by the witness is properly excluded where the letter is in the possession of counsel propounding the question, and has not been submitted to the witness for inspection; nor can the rejection of such a question be said to have been prejudicial where the letter was subsequently produced, and shown to contain no such statements as imputed by counsel.

5. WITNESSES—ANIMUS—CUMULATIVE TESTIMONY.

The exclusion of a letter admissible only for the purpose of showing the animus of a witness is not prejudicial error where his hostility is already apparent from his testimony.

6. EVIDENCE—EXISTENCE OF CLAIM.

The fact that a letter, while stating that the writer is "hard up," makes no claim against the person to whom addressed, has no tendency to show that such person was not indebted to the writer, and it is properly excluded when offered for that purpose.

7. TRIAL—EXCLUSION OF QUESTION—REMEDY.

Error will not lie on the exclusion of a question as leading, where it is apparent that counsel could have elicited the facts desired by changing the form of the question.

8. INSTRUCTIONS TO JURY—ADMITTED FACT.

In instructing the jury, the court may properly assume a fact as admitted where it has been treated as such throughout the trial.

9. EVIDENCE—CONTENTS OF LETTER—COMPETENCY OF WITNESS.

One at whose direction a letter was written by another, and who read it after it was written, is competent to testify as to its contents.

10. EVIDENCE—ADMISSIONS—REMOTENESS.

Evidence of statements expressive of a desire to adopt a child not then born is so remote as to be inadmissible upon the question of the existence of a contract claimed to have been made several months thereafter, whereby the person making such statements was to be compensated for the care of the child.

11. CONTRACT FOR SUPPORT OF CHILD—EFFECT OF ATTEMPTED ADOPTION.

In an action upon an express contract for services rendered in the care of a child, evidence that insufficient articles of adoption or apprenticeship were made to plaintiff's wife is admissible only as bearing upon the probability of the execution of the contract sued upon, and of plaintiff's reliance thereon.

12. REJECTION OF TESTIMONY—CURING ERROR.

Any error committed in rejecting testimony upon a branch of the case is cured where counsel are subsequently afforded ample opportunity to inquire into the subject.

13. 'EVIDENCE—MOTIVES OF WITNESS.

A witness is properly permitted to explain his reasons for his

acts in connection with the transaction to which he testifies, where otherwise the existence of a motive might be inferred unfavorable to the contention of the party calling him.

14. EVIDENCE—CROSS-EXAMINATION—ANIMUS OF WITNESS.
    A party to a suit who has drawn out the fact that the opposite party has been arrested for a criminal offense may be asked on cross-examination, as bearing on the question of animus, if he did not instigate the making of the complaint upon which the arrest was founded.

Error to Ionia; Davis, J. Submitted June 14, 1895. Decided July 9, 1895.

*Assumpsit* by Lucius C. Burt against Edward Long to recover for the support of defendant's daughter and her child. From a judgment for the plaintiff, defendant brings error. Affirmed.

*Mains & Mains (Miller & Clute,* of counsel), for appellant.

*W. H. Howard* and *McGarry & Nichols (M. A. Nichols,* of counsel), for appellee.

MONTGOMERY, J. Plaintiff brought this action to recover compensation for the board of the bastard child of defendant's daughter from June 15, 1883, to June 15, 1894, and for board and care of defendant's daughter, the mother of the child, for seven months, and for care and nursing during confinement, and for cash paid midwife. Plaintiff claims that defendant's wife brought the daughter to plaintiff's house, at Carrollton, near Saginaw, from Ionia county, and told him that defendant sent her with the request that plaintiff care for her, and said he would pay well for it, and that the defendant sent a note by his wife, stating the same thing. Plaintiff claimed that, after the child was some six months old, he took the mother and child home to defendant, and that he (defendant) then requested the plaintiff to take the child back to his (plaintiff's) home, and promised that he (defendant) would pay well for it. Defendant denied any

such agreement to pay, and claimed that plaintiff's wife adopted the child. These were the issues tried before the jury. A verdict of $1,300 was awarded, and defendant brings error.

The record contains an even 100 assignments of error. We think it proper to call attention to the practice resorted to in this case. It is reasonably safe to say that no one connected with this case on either side entertains the opinion that on the trial of these simple issues the learned circuit judge committed 100 distinct errors. It ought to be clear to counsel for defendant that there was no such number of even doubtful rulings. In the present case the questions which could legitimately arise were whether, if the plaintiff proved the promise alleged and the services, he was entitled to recover; and this is not doubtful. And, secondly, did the court observe the rule that the evidence must be confined to the point at issue between the parties, and the rule that the best evidence of which the nature of the case admits must be adduced? And, thirdly, did the court fairly submit the issues involved to the jury for determination on the facts?

1. Plaintiff testified that, when defendant's wife brought the daughter of defendant to Carrollton, she brought a note from defendant, reading in substance: "Burt, keep this child, if possible; and I will pay you well for it, and my wife will tell you the rest." The first four assignments of error discussed relate to the alleged error in receiving parol testimony of the contents of this note. It is urged that the proper foundation was not laid by showing search for the letter. The trial took place in 1895, and the paper is claimed to have been received by the plaintiff in 1883. Plaintiff testified on direct examination that the paper was lost. On cross-examination he testified:

"I haven't noticed it since we came out here. I don't remember how long we kept it. I didn't pay any attention to it. It might have been there for a month or two after she came out there. I remember reading it or

seeing it. I don't know what became of it; I just read it and laid it down, and I.have not seen it from that time until now, and I haven't searched for it at all. The most of my papers were burned up. My house burned up in 1890. I had a place where I kept my papers. I saved some of them. My deeds, and such as that, I kept in my satchel in my bedroom; but papers that I didn't pay much attention to were burned up. I saved my papers that were in my bedroom in my satchel. This paper was not in my satchel among the papers. I looked it through, and did not find it."

He further testified that he had never made a distinct search for that one paper, but that he had searched through the satchel for papers.

We think the testimony was sufficient to admit proof of the contents. It appears from it that the papers, outside of a few kept in the valise, were burned. If all the papers in the house had been burned, there could be no doubt that the loss was sufficiently shown. If, in addition to the fact that all the papers in the house except those in the satchel were burned, plaintiff knew from familiarity with the papers that no such paper was among them, this sufficiently showed loss. The fact that he did not make search for that particular paper in the valise, if it was never the receptacle for the paper, does not show a want of due effort. The cases cited by defendant's counsel are clearly distinguishable. In *Darrow* v. *Pierce*, 91 Mich. 66, the witness had placed the paper in the hands of a third person, and showed no inquiry of him, or effort to secure it of him. In *Angell* v. *Loomis*, 97 Mich. 5, witness did not testify where he had searched for the paper, and there was nothing in the case tending to show its destruction. In Greenleaf on Evidence (volume 1, § 558) it is said:

"What degree of diligence in the search is necessary it is not easy to define, as each case depends much on its peculiar circumstances. * * * But it seems that, in general, the party is expected to show that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the

nature of the case would naturally suggest, and which were accessible to him. It should be recollected that the object of the proof is merely to establish a reasonable presumption of the loss of the instrument, and that this is a preliminary inquiry addressed to the discretion of the judge. If the paper was supposed to be of little value, or is ancient, a less degree of diligence will be demanded, as it will be aided by the presumption of loss which these circumstances afford."

2. The next assignment discussed relates to the exclusion of a question on the cross-examination of plaintiff. He testified to the fact of a quarrel between himself and defendant in front of plaintiff's house. He said:

"My wife could hear him talk. Sometimes I raised my voice a little bit. I think a little bit louder than I am talking now."

*Q.* "How loud? So they could hear you four rods?"

*A.* "They could hear me across the room, anyway."

*The court interposed:* "I don't see how you are going to come in here and raise an issue in this way. You are spending a good deal of time over that."

*Mr. Miller:* "He has testified he thought his wife could hear the conversation."

*The Court:* "There are but one or two issues in this case, and you will have to rely upon the statements of witnesses in some cases. We might raise a dozen or fifteen issues, but you can't follow them all out. It appears they did have trouble. That can be met. All the detail it don't seem necessary to go into."

*Mr. Miller:* "Does your honor rule the question out?"

*The Court:* "I think you are spending too much time over the question."

It will be noticed that the court did not strike out the testimony. It was not of much importance, and it may have seemed to the court that too much time was being spent on the question. We see no reason to doubt the accuracy of his judgment. No error was committed.

3. Mrs. Burt, plaintiff's wife, on cross-examination, had testified: "I never wrote a letter to my sister, Mrs. Crandall, in which I said that we were going to fight, and that unless she came down and stayed by us, and went for a

row, we would never get a cent." She was then asked: "Did you ever write them to the effect that you were going after him now, and try and get your share of the property, for you couldn't get it in any other way?" The question was excluded. It does not appear just what objections were urged, but it does appear that, from the facts within the knowledge of the court, enough good ones existed. In the first place, this testimony was only competent as laying the foundation for an impeachment of the witness, and no time, place, or circumstance was fixed. Furthermore, it was known to the court that the letter to which this inquiry referred was there, in possession of defendant's counsel, and fairness to the court as well as to the witness required that it should be submitted to the witness for inspection. In fact, the letter had already been identified by the witness. Furthermore, the witness had substantially covered the subject by her testimony. And, lastly, the letter itself, afterwards produced, shows on its face that it contains no such statement as the counsel implies in the question propounded.

4. Assignments of error 32 and 33 relate to the exclusion of the letter. This letter was excluded for the reason that it did not tend to contradict the witness on material points. The only purpose for which it could fairly be suggested that it could be used was to show generally the animus of the witness. But it had already appeared that she was an adverse witness. She was the wife of the plaintiff, and had already shown on the witness stand that she was an enemy of her father. The letter could not have made this more clear. The only other matter contained in the letter was an assertion of enmity to or distrust of her brothers and sisters, and an avowal that she would not be beaten out of her share of the estate. This in no way contradicted her on material questions. The ruling excluding it was not error. Exhibit G (another letter written by this witness) was in the same line, and properly excluded.

Defendant also offered in evidence a letter from plaintiff to defendant, in which he wrote about being hard up, but did not dun the defendant. We do not think this had any tendency to support the defense.

5. When defendant was on the stand, and while testifying in reference to the occasion when his wife went with the girl Phoebe to Carrollton, he was asked: "Did you, in that conversation, tell your wife or advise your wife to take your daughter to Saginaw?" This question was objected to as leading, and excluded. Whether the question was strictly leading or not, the circuit judge has some discretion in shaping the course of a trial, and the ruling excluding the question did not injure the defendant, as he could still have put a question which would elicit the facts. See *Fraser* v. *Jennison*, 42 Mich. 206. Indeed, it appears that defendant fully testified on the subject.

In the same connection, it is urged that error was committed in charging the jury as follows:

"In determining whether such a contract was made, you are to take into consideration the situation of the parties at the time, what was said by them, if anything, the letters that have been offered in evidence in the case, and all of the evidence given here on the trial, the condition of the girl, the fact as to who was the father of the child, the admitted fact that defendant had his wife take her to Burt's."

It is said that it was not an admitted fact that defendant had his wife take the girl to Burt's, but that he testified that he objected. But we are convinced that, whatever he may have said in the first instance to his wife upon the subject, it is beyond dispute, and was treated on the trial as an admitted fact, that he did send his wife to Saginaw with the girl.

6. The next assignment of error relates to the rulings of the court by which plaintiff was permitted to testify that his wife wrote to defendant by his (plaintiff's) direction, stating that he wanted something more than a mere

verbal contract that he was to be paid for keeping the child. The defendant admitted having received a letter at this time, but denied that its contents were as claimed by the plaintiff, and the question was as to its contents. If the plaintiff knew what its contents were, and he swore he did, he was a competent witness. It is urged that his testimony was incompetent because it occurred in the absence of defendant; but the court excluded the conversation, except only the fact that plaintiff gave direction to his wife to write a letter. This was a part of the *res gestæ*. The contents of the letter were sworn to, not from these instructions, but from having read it. Defendant's counsel, in their brief, state:

"If plaintiff had seen the letter written, and known its contents, it would be admissible; but telling his wife what to write, and not knowing whether she wrote what he told her or not, would clearly be incompetent."

We agree with this, but counsel will discover by a casual reading of the record that that is precisely what was done in this case. Plaintiff testified that he did read the letter, and did not testify what he instructed his wife to write.

*Q.* "What instructions did you give her?"
*The Court:* "I think you had better show what was written."
*Q.* "Do you know what was written?"
*A.* "Yes, sir; I told her to write."
*Mr. Miller:* "I object to what you told her."
*Q.* "What was written? Did you see the letter?"
*A.* "Yes, sir; in regards to keeping the child?"
*Q.* "Yes."
*A.* "That I wanted something more than a verbal contract to show that I was going to get paid for keeping the child."

7. Defendant sought in various ways to show that plaintiff had contemplated adopting the child, and that plaintiff's wife did adopt it, and a large number of assignments of error relate to the rulings of the court upon these questions. Some of the assignments predi-

cate error on the exclusion of alleged statements made by
the plaintiff before the birth of the child, expressing a
wish of plaintiff to adopt the child. We think this testi-
mony was too remote. It preceded by some months the
time when the plaintiff took the child and its mother to
defendant's house, and the occasion when, according to
plaintiff's theory, the agreement for the future care of
the child was made.

The defendant offered testimony tending to show that
plaintiff had adopted this child, or that it had been ap-
prenticed to plaintiff's wife. Upon this subject the cir-
cuit judge charged the jury as follows:

"There has been no testimony received in this case
which shows any legal adoption or apprenticeship of this
child by Burt or his wife, and I charge you that the only
purpose for the receipt of the testimony respecting what
Burt has said in relation to wanting this child or having
adopted the same is to bear upon the question of the
probability of the contract being made, as claimed by the
plaintiff. Take into consideration, gentlemen, in connec-
tion with that, the reasons that have been given why
they claimed the child to be theirs, if such claim was
made, and if you find that such apprenticeship papers
were actually made, and what they said in relation to
that, if they said they had such papers, and that is the
claim in part, I think, as throwing light upon their under-
standing at the time. Did they at that time consider
that they were keeping the child by reason of a contract?
Was it probable that they were so doing if they at the
same time were holding out that they kept the child by
reason of the apprenticeship papers? Not because the
apprenticeship papers were binding or were of any legal
force; it only throws light upon the credibility of the
parties. Were their statements then consistent with
what they have made in this court, or were they made
for the reason that plaintiff claims,—simply to hide the
disgrace of the girl Phoebe? Take into consideration the
relationship of the parties, the fact that Phoebe was the
sister of the plaintiff's wife, all the circumstances that
have been divulged by the testimony bearing upon the
proposition."

He further charged the jury, at the request of the plaintiff:

"I charge you that, if you find that the contract was made, the fact of the talk of adoption would not release Mr. Long from his liability under the terms of this contract, if Burt still continued to maintain and support the child, relying upon the agreement of Long; but whether he did so rely you have a right to consider what he may have said."

And then, on his own motion, added:

"You have a right to determine from all the evidence in the case, that in relation to the adoption as well as the other evidence in the case, what was the contract, if any; and, if you find it made as claimed by the plaintiff, did he rely upon the last contract, or was he relying upon something else?"

In addition to this, the court submitted special questions to the jury as follows:

"*First.* Did the mother of the child Nelson draw up and send to Harriet Burt, wife of the plaintiff, articles of apprenticeship?

"*Second.* Were the same received by Harriet Burt, wife of the plaintiff?

"*Third.* Did the plaintiff know of such papers?

"*Fourth.* Did the plaintiff hold out to the defendant and to the world in general that the child Nelson had been adopted or apprenticed by himself and wife?"

All four of these questions were answered in the negative, and clearly dispose of the adoption or apprenticeship papers, unless, as contended by defendant's counsel, there was error in excluding testimony on this subject. It is true the court, when the apprenticeship papers were first received, and when it was ascertained that they were made to plaintiff's wife, and not to plaintiff, and upon the statements of defendant's counsel that he did not expect to show that plaintiff himself had anything to do about making the papers, excluded the evidence. But subsequently, at page 90, the court said to counsel:

"At this point, it appearing already to a certain extent some testimony has gone in without objection on the part of the plaintiff in relation to certain articles claimed by defendant to have been made by the daughter Phoebe as to apprenticeship, the court now allows the defendant to go into that matter as fully as they offered to yesterday, if they desire; so far as making the offer subject to the ruling of the court as to the materiality of such portions as may be objected to hereafter. I do this, gentlemen, because I think enough already has gone into the case, and the jury have a partial idea of it, the same having gone in without objection, and under objection I shall allow the entire evidence to be considered by them."

This opened the door fully.

Counsel in their brief say:

"No special question was asked the jury whether plaintiff himself had adopted or apprenticed the child. Neither was any question asked whether the wife of the plaintiff had adopted or apprenticed the child with the knowledge or consent of the plaintiff. Neither was the question asked if the plaintiff had held out to the defendant that he had adopted the child. And neither was the question asked if the plaintiff had held out to the world in general that he had adopted the child."

When it is considered that the only testimony tending to show an adoption or apprenticeship was that which related to the adoption by the plaintiff's wife, we fail to understand why this should have been inserted in the counsel's brief. When a witness for defendant, James Long, was on the stand, and was interrogated with reference to a talk with plaintiff about having papers for the boy, the court asked of counsel: "You don't claim that Burt [plaintiff] had anything to do about making the papers, Mr. Miller?"  *A.* "No." When it was first offered to show the existence of apprenticeship papers, counsel for plaintiff asked: "Your proposition is this: That these papers, the apprenticeship papers, were made to Mrs. Burt?" Mr. Miller replied: "Yes, sir."

We think the opportunity offered the defendant to go into this subject was ample; that the court submitted to

the jury the question of whether such papers were made for the only purpose for which they were admissible; and the jury sustained the plaintiff's theory, and evidently disbelieved the witnesses of the defense.

8. Certain assignments are based upon the rulings of the court in allowing witnesses for plaintiff to explain and give their reasons for their acts in connection with the transaction in question. The facts were such that an inference might, but for the explanation, have been drawn unfavorable to plaintiff's contention, by assuming the existence of certain motives or reasons. We think the testimony received falls within *Ives* v. *Tregent*, 29 Mich. 390, and *Hall* v. *Moriarty*, 57 Mich. 345.

9. Complaint is made of the allowance of certain questions to the defendant upon the subject of whether he had caused a complaint for rape to be made against the plaintiff. Defendant's counsel had drawn out the fact that plaintiff had been arrested for rape upon the person of defendant's granddaughter, and this inquiry was proper as bearing upon the animus of defendant. It is urged that the complaint was the best evidence; but the fact that plaintiff was arrested had already been shown, and the inquiry simply related to defendant's connection with the arrest. He testified that he did not make the complaint, but the inquiry was further pressed to ascertain whether he had instigated it. It was competent for the purpose stated.

10. We have carefully examined the exceptions to the charge of the court as given, and to the refusals to charge as requested. We think the court very fairly presented the questions involved in the case for the determination of the jury. There was room for a different verdict, but there was at least equal ground for reaching the conclusion which the jury did.

We think no prejudicial error was committed on the trial, and the judgment will be affirmed.

The other Justices concurred.