## BARBOUR v. HURLBURT.

ASSUMPSIT — COMMON COUNTS — PURCHASE — FRAUDULENT REPRE-
SENTATIONS AS TO PRICE—RESCISSION.

Defendant, representing that a mine could be bought for $60,-000, obtained $1,000 from plaintiff, on the understanding that defendant was to raise $65,000 from different persons, pay $60,000 for the mine, and convey it and the remaining $5,000 to a corporation to be formed to work the mine; plaintiff to have one sixty-fifth interest in the syndicate. Defendant in fact purchased the mine for $10,000, and kept $50,000 himself. *Held*, that plaintiff, who had received his interest in the mine by reason of his interest in the corporation to which the deed was made, not having rescinded before commencement of action, could not recover the entire amount paid by him; but in assumpsit on the common counts he could, on the theory of an affirmance of the purchase at the price actually paid, recover his proportion of the money not used in accordance with the contract, or on special counts he could recover damages for the fraud under 3 Comp. Laws, § 10421.

Error to Wayne; Rohnert, J.  Submitted April 5, 1904.
(Docket No. 8.)   Decided September 14, 1904.

Assumpsit by Levi L. Barbour and Dwight C. Rexford
against Charles A. Hurlburt for money had and received.
There was judgment for plaintiffs on a verdict directed by
the court, and defendant brings error.  Reversed.

*George W. Bates* (*John D. Conely*, of counsel), for
appellant.

*John W. Beaumont* and *Dwight C. Rexford*, for ap-
pellees.

HOOKER, J.  The plaintiffs recovered a verdict and judg-
ment for $1,033.32 upon a count for money had and re-
ceived, the case having been commenced by attachment.
The court directed the verdict, and defendant has ap-
pealed.  The substance of plaintiffs' claim is that they
were solicited by the defendant to join with himself and
others in the purchase of some mines, and in forming a
corporation to develop and operate the same, to which
corporation the mines were to be deeded, which, with
$5,000 of the money raised, were to constitute its capital
stock.  He represented that one Dempster had an option
upon these mines at the price of $60,000, and thought so
well of them that he was willing to take an interest, as
was the defendant.  Plaintiffs consented, and paid over
the money, i. e., $1,000, to defendant, as did others.  They
afterwards subscribed articles of association and elected
officers.  They afterwards discovered that Dempster had
an option on the mines for $10,000, and that defendant
knew that his option was not for $60,000, and that it was
for not over $25,000, and that $10,000 was all that was
paid to the owner for the property, and that Hurlburt and
Dempster and one Hovey, who was interested in the deal
with Hurlburt, divided the remainder of the money be-
tween them, unless possibly $5,000 was paid to the corpo-
ration.  The court said to the jury that:

"The plaintiffs in this case seek to recover in an action in assumpsit under what is ordinarily termed the common counts for the recovery of $1,000, which the plaintiffs paid to the defendant for a certain purpose.   The plaintiffs claim that not having devoted this money for the purposes for which it was paid over, that defendant still has that $1,000, which they are entitled to recover from the defendant.   The plaintiffs also claim that they are entitled to sue in assumpsit on a promise to pay, based upon the fact that they were induced to part with their money by the deceit and fraudulent representations of the defendant. The court has excluded this view of the case, holding that under the common counts the action cannot be maintained on an implied promise to pay based upon deceit and fraud. The plaintiffs, therefore, are restricted in their rights to recover, if they are entitled to recover at all, upon the first theory which I have stated.   It is upon this plaintiffs plant their case.   In this case the testimony is substantially all on behalf of the plaintiffs; that introduced on behalf of the defendant amplifying, extending, and explaining facts which were not shown in the plaintiffs' testimony, apparently not denying any of the testimony of the plaintiffs, nor was defendant's testimony contradicted by the testimony of the plaintiffs."

After stating further that there was nothing to show that at the time the money was paid to the defendant there was any syndicate in existence of which defendant could be the agent, he said that in the light of the testimony, including the receipt given by him for the money, he received it as a custodian, to be used in payment of the one sixty-fifth interest in the syndicate to purchase these mines at the price of $60,000.   Continuing, he said:

"So that when he represented to Barbour and Rexford, and got their money as custodian, it was for the purpose of putting it into this group of mines at a price which he represented to them, and when they put up their $1,000, it was for the purpose of going into a proposition such as he represented to them.   It appears as a fact in this case that the Sapphire group of mines was not the group of mines which he represented them to be.   While it was the same property, the price or value was a feature of that property, and when it differs from that which is represented as the price or value, it ceases to be the property

represented by Hurlburt. So that I charge you, gentlemen, as a matter of law, that at the time of the payment of this $1,000 by Barbour and Rexford, it was given to Mr. Hurlburt to hold as their agent until such time as a syndicate was formed to purchase the Sapphire group of mines, having an actual selling price to the syndicate by the actual owner at that time of $60,000. It was not to be paid by the agent to the syndicate to purchase the Sapphire group of mines in British Columbia, having a selling price of $10,000 or $25,000 from the owner to the syndicate. If this were as far as the testimony had developed the case at this time, a verdict would be directed in favor of the plaintiffs and against the defendant for the amount which they put up, and which was not appropriated to the purpose for which it was put up."

Continuing, he said:

" Other features of the case were developed, and we will now proceed to consider those. It appears that in the original talk it was contemplated that a corporation be formed to take this property over from the syndicate. It appears, also, from the testimony, that a corporation known as the Sapphire Gold Mines, Limited, was organized. It appears, also, that the plaintiffs in this case took part in the organization of that company. It appears, also, that a resolution was passed by that company, directing the acquisition of the Sapphire mines, and to pay therefor the entire capitalization of the company. The meeting at which this resolution was passed was participated in by one of the members of plaintiffs' firm. It also appears from the testimony that not until some time after the 1st of August did the plaintiffs know that the owner under the option—the original option—was selling the Sapphire group of mines for less than $60,000, or selling it for $10,000 or $25,000. It therefore appears that at the time of the organization of this company they did not know these facts with regard to this mine, and their direction or the direction of the company for the acquisition of this mine, being participated in by Barbour and Rexford, must be construed as a direction to purchase the group of Sapphire mines, such as the defendant represented them to be, viz., having a selling value from the original owner of $60,000. They did not direct the purchase of a $10,000 Sapphire mine, or Sapphire mines having only a value of $10,000 or $25,000. This arrangement and the organiza-

tion of the corporation and its acquisition of the mines, while it was contemplated at the time of the organization or original subscription of February 18th, is not a part of that transaction. The money was paid for the purchase of an interest in a syndicate, and not in the corporation— a 1/65 interest in the syndicate, which was to take over these mines. If the defendant in this case had done his duty by the plaintiffs, he would not have invested that money, or turned the money over for the payment of an interest in the Sapphire mining syndicate, for a mine having a selling value of $10,000. If he had done that, the corporation was in no situation to purchase these mines from the syndicate. While this was, in effect, the scheme, the consummation of it and the organization and acquisition by the corporation would not have been possible if this money were only appropriated in the direction for which it was directed to be appropriated by Barbour and Rexford, and that is for the acquisition of an interest in a syndicate to purchase a $60,000 Sapphire group of mines. While Barbour and Rexford obtained an interest in the corporation, and perhaps indirectly obtained an interest in this group of mines, yet, when they discovered the situation, they at once wrote a letter rescinding the action, or disclaiming the transaction. At that time the defendant was not in Michigan. He was not where a tender could be made with reasonable ease. He did not return to this State until after this suit was commenced. A tender was made of an assignment of whatever interest Barbour and Rexford had by reason of this transaction. While the question of fraud and deceit does not enter into this case, yet whatever situation Barbour and Rexford are in today is by reason of the conduct of the defendant in this case, and all that he can reasonably expect is to acquire whatever interest they had; they having disclaimed to be bound by anything which was done. In view of the circumstances, gentlemen, the plaintiffs having made a tender of whatever they had and an assignment of whatever they have to the defendant, they are in a position to recover the money which they turned over to Mr. Hurlburt to use for a certain purpose. Having never used it for that purpose, he now holds this money for their use and benefit, and they are entitled to recover the amount, with interest on the same from September 20, 1902, the date of the commencement of this suit. I direct a verdict for the plaintiffs against the defendant for the sum of $1,033.32."

Upon the testimony, all of which we feel justified in saying is in the record, it is conclusively shown that the defendant obtained the money in question through misrepresentation and deceit. We have no hesitation in saying that contract relations existed between the parties, in accordance with which the plaintiffs paid, and he received, the money. The agreement was that he should use it, in connection with a sufficient amount of other money to make $60,000, in payment to Dempster of $55,000 for the title to the mines, and $5,000 was to be reserved as cash for developing purposes, presumably to be paid to the corporation when formed for that purpose. Plaintiffs' money was to pay for one sixty-fifth interest. At this time defendant made no promise to a syndicate or corporation. It was a promise to take plaintiffs' money, and make a certain disposition of it, and he was accountable to them if he did not. Whatever claim other investors or the corporation subsequently had could be enforced by it against the plaintiffs, perhaps, but not against the defendant. When the fraud was discovered, the property had been procured and deeded to the corporation. The plaintiffs were practically in possession of the one sixty-fifth interest through their interest in the corporation which held the deed. Three courses were open to them. One was to promptly rescind the contract, and recover the money which had been fraudulently obtained. But the evidence shows that this was not done. Complaint was made and correspondence had saying that the best thing for defendant to do was to send $2,000 to cover this and other subscriptions, but not until after the trial had begun was there a notice of rescission, with an offer to put defendant in statu quo, as nearly as practicable. The court, therefore, rightly excluded the theory of rescission. The plaintiffs also had a right of action to recover damages for the fraud or deceit either through an action on the case or an action of assumpsit, under 3 Comp. Laws, § 10421. In neither of these cases would the common counts be a proper declaration. See *Hallett* v. *Gordon*, 128 Mich. 364 (87 N. W.

-261); *Anderson Carriage Co.* v. *Pungs*, 134 Mich. 79 (95 N. W. 985). The third remedy rests on the theory of an affirmation of the purchase at the price actually paid, and the recovery back from the defendant of the money not used in accordance with the contract. We see no reason why such recovery could not be had upon the common counts. It is said that the bill of particulars does not cover such a theory, but we think otherwise. It is as follows:

"Money received by defendant as plaintiffs' agent or custodian for the purpose of paying for 1 / 65 interest in the syndicate to purchase the Sapphire group of mines, situated near Slocan City, British Columbia, $1,000. Interest thereon."

It is not inaccurate to say that defendant received the money as agent or custodian. Plaintiffs were not purchasing from him, for he had nothing to sell. They were associated with him in the purchase and proposed scheme, and intrusted their money to him for the agreed purpose. Had he been unable to purchase the mines, they would have been entitled to recover it from him.

There are many assignments of error upon rulings and requests to charge in this case that need not be discussed. It seems obvious that the court should not have directed a verdict for the defendant. It is possible that he might properly have directed a verdict for the plaintiffs for some sum, representing the unexpended money, or, had he been requested, he might have permitted an amendment of the declaration, and left the case to the jury under the statute cited; but we think the theory adopted in the charge erroneous. The plaintiffs had received the property. They were not entitled to keep it, and also recover back the full amount of money paid to defendant.

The judgment is reversed, and a new trial directed.

The other Justices concurred.