BILLIG *v.* GOODRICH.

1. FRAUD—MISREPRESENTATION—VENDOR AND PURCHASER.

   A map on one side of letter paper of real estate agents incorrectly showing the location of lots, is a material representation of fact where the value of the lots depends upon their nearness to a city and a proposed plant of a large steel corporation.[1]

2. PRINCIPAL AND AGENT—EVIDENCE—SUFFICIENCY.

   Evidence *held,* sufficient to show the agency of a firm acting for defendant in the sale of the lots.

3. ACTIONS—COMMON COUNTS IN ASSUMPSIT—FRAUD—RESCISSION.

   Recovery may be had on the common counts for money paid on a contract into which plaintiff was induced to enter by fraudulent representations of the defendants, and which plaintiff repudiated.

4. SAME.

   A recovery may not be had under the common counts in assumpsit under 3 Comp. Laws, § 10421 (3 Comp. Laws, 1915; § 12350), providing that in all cases where, "by the fraudulent representations or conduct of any person, an injury has been produced, either to the person, property or rights of another, for which an action on the case of fraud or deceit may by law be brought, an action of assumpsit may be brought to recover for such injury, and in all such cases a promise shall be implied by law to pay all just damages arising from such fraud or deceit, and may be so declared upon."

Error to Wayne; Withey, J., presiding. Submitted October 5, 1917. (Docket No. 40.) Decided December 27, 1917.

Assumpsit in justice's court by Adolph Billig against Joseph P. Goodrich and another for money had and received. There was judgment for defendants, and

[1]On right of action to rescind contract for the sale of land for misrepresentations as to location, see note in 38 L. R. A. (N. S.) 303.

plaintiff appealed to the circuit court. Judgment for plaintiff. Defendants bring error. Affirmed.

*Bailey & Bradley,* for appellants.

*Millis, Griffin, Seely & Streeter,* for appellee.

OSTRANDER, J. In justice's court plaintiff declared orally "in an action of assumpsit on all the common counts, especially on a written contract, claims damages $500 or under, and waives tort. The defendants pleaded the general issue." This from the return on appeal. The items of plaintiff's demand, according to a bill of particulars, are:

To sum paid in purchase price of lots 195, 196,
 . . and 206 of block O of Ojibway Park subdivision $275.00
Expenses in going to and from the property.. 200.00

                                                $475.00
Interest .......................................

A more particular bill was asked for, and not furnished. With the plea defendants gave notice that plaintiff was indebted to defendants, the amount of which would be set off against the demand of plaintiff. The particulars of defendants' demand are:

Sept. 29, 1915. To amount due on 13 notes
    dated Oct. 30, 1913, for $25 each, due respect-
    ively one, two, three, four, five, six, seven,
    eight, nine, ten, eleven, twelve, and thirteen
    months after date ......................... $325.00
Sept. 29, 1915. To interest thereon........... 43.87
Sept. 29, 1915. Two notes dated Aug. 30, 1913,
    for $50 each, due respectively Nov. 1 and Dec.
    1, 1913, with interest thereon to Sept. 29, 1915  112.48
Interest to Dec. 22......................... 14.50

                                                $495.85

Defendants had judgment. What objections were raised to the declaration in justice's court we do not know.

Upon the trial in the circuit court, before any testi-

mony was introduced, defendants withdrew two notes of $50 each as set-off, and moved to strike the declaration from the files, counsel saying:

"The declaration in this case, it seems to me, is insufficient to support the cause of action which my brother has outlined to the jury, an action of fraud, and I move to strike the declaration from the files as insufficient. The declaration is oral, and it merely declares fraud, not setting forth in detail in any particular what the fraud consists of."

The motion was overruled. Objection was made to admitting any testimony because the declaration was insufficient. This was overruled. The trial resulted in a verdict and judgment for the plaintiff.

The testimony for plaintiff tended to prove that the defendants owned, or claimed to own, a parcel of land in Ontario, Canada, which may be roughly described as a part of lot 34 in the second concession of the township of Sandwich, facing on the easterly side of Malden road, and containing 56 acres, more or less. Defendants contracted with certain persons, first with Ed. E. Samuel and Le Roy W. Cummings (Samuel & Cummings), in February, 1913, for the purchase and sale of the land. Later others were admitted by a supplemental agreement as vendees. In its essence this contract contemplated the platting of the land into blocks and lots by the vendees (and it was platted and called Ojibway Park) ; that the vendees should sell the lots in a manner described to net a certain sum to the vendors per lot; and authority is given the said vendees to sell the lots and any of them for any price more than $125 each "net to parties of the first part."

The vendee agents had an agent in Chicago, where plaintiff lived. They had stationery, and on one side of the letter paper is a map. The Chicago agent was supplied with the letter paper. It came to pass that

he attracted the attention of plaintiff to the property. It was supposed that the United States Steel Corporation owned and would own and improve land in the vicinity, and the city of Ojibway had prospects depending more or less upon the action of the steel corporation. The map showed the Detroit river, city of Windsor, Canada, the city of Ojibway, land marked "United States Steel Company," and various subdivisions of land, including Ojibway Park. It represented Ojibway Park as immediately adjacent to the east boundary of the city of Ojibway. Plaintiff saw the map and heard, but without relying upon them, various oral representations of the Chicago agent of the vendees of the owner. On the 30th of August, 1913, plaintiff purchased or agreed to purchase lots 196 and 206, block O, "according to plan of Ojibway Park subdivision," for $850. Mr. Crane marked with ink, upon a copy of the map, the location of the lots, and a written instrument was made and delivered to plaintiff in Chicago, signed by defendants, by Samuel & Cummings, and bearing also the initials "A. M. C.," meaning, presumably, A. M. Crane, the Chicago agent. The parties to the agreement are the defendants and the plaintiff, and it recites:

"The sum of one hundred (100.00) dollars to be paid on the signing of this agreement and the balance in consecutive monthly installments of fifty (50) dollars each; the first of said installments to be paid in one month from date hereof."

Plaintiff paid $100, and gave 13 notes for $25 each; the payees in each of them being the defendants. A written receipt for the $100 payment was given to him by Crane, signed, "Samuel & Cummings, A. W. Crane." It was written upon a letter head of Samuel & Cummings. Plaintiff went to Detroit, desiring to see the property, and carried with him a letter, written and signed by A. M. Crane, addressed to Samuel &

Cummings, in which it is stated that he had bought two lots, "and I have agreed that you will return his money without deductions if he is not satisfied after investigating." Some one for Samuel & Cummings went with plaintiff to, or near to, the property. There was little to see except a bare country. Later on plaintiff bought another lot, perhaps while on this trip to Detroit, and a similar writing to the one described was executed. It is dated September 30, 1913. Plaintiff signed neither agreement. He again, and alone, visited the land, and then learned for the first time, he says, that he had been deceived, principally by the map hereinbefore referred to. Testimony tends to prove, and it is not disputed, that Ojibway Park is, in fact, a long distance from the eastern boundary of Ojibway city, and his lots are much farther from the city limits and from the plat marked on the map to the steel company than the map discloses. He did no business with the defendants, directly. After his last visit to Ontario, which was in November, 1913, he returned to Chicago, saw Mr. Crane, showed him the map he had and two other maps issued by others, said he had been deceived, and demanded the return of his money. As testified to, he said, "You return my money; I am through with you." Later he received a letter, dated November 22, 1913, at Detroit, written by Campbell & Sibley, "successors to Samuel & Cummings," in which they refer to information they have received from Mr. Crane by telephone, and in which they assert that:

"Our map is drawn from an official county map and is probably the most correct map ever printed, showing the territory adjacent to the newly incorporated city of Ojibway."

There is much more in the letter. Plaintiff's demand for the return of his money was not recognized, and he brought this suit.

Assuming the plaintiff's cause of action as proven to be stated in the declaration, there is testimony requiring the case to be submitted to the jury as it was submitted, and neither in rulings complained about admitting and excluding testimony, in refusing to charge, nor in the charge does reversible error appear.

The map was a representation of a fact, and an important one. The city or town of Ojibway was incorporated in the year 1913 by statute. The property surrounding it became, to some extent at least, speculative property. It will be assumed that its value depended, and its probable increase in value, to some extent, upon its remoteness from the city and from the steel company's property. If what the map represented was not qualified, as defendants claim it was, and plaintiff says it was not, by oral statements, it misrepresented greatly the actual relative positions of the city and the lots purchased by plaintiff. The acceptance by the defendants of the notes given in part payment of the purchase price, the execution and delivery of the land contracts and other documentary evidence, and the plea of set-off sufficiently evidence the agency of the men with whom plaintiff did business, especially in the absence of contradictory evidence. Upon the facts the issue is a simple one, fairly submitted to the jury.

The serious question presented is whether the declaration is a good one. Appellee says:

"There are four reasons (each sufficient in itself) why the plaintiff's declaration is sufficient, to wit:

"(1) Purchase money may be recovered under the common counts, in assumpsit without a special count, where the contract has been made void by fraudulent representations.

"(2) When there is nothing further to be done than the payment of money, the common counts in assumpsit is a sufficient declaration.

"(3) The contracts were void under the statute of

frauds. 3 Comp. Laws, § 9511 [3 Comp. Laws 1915, § 11977].

"(4) Upon the facts and pleadings before the justice, to which defendants did not object, and on the theory of an action in assumpsit, waiving tort, under the statute (3 Comp. Laws, § 10421 [3 Comp. Laws 1915, § 12350])."

This statement seems to indicate some confusion of thought. Assumpsit may be a proper remedy when the common counts would not properly state the plaintiff's claim. The statute referred to permits an action of assumpsit to be brought in certain cases, but it does not permit a recovery upon the common counts. Quite the contrary. *Anderson Carriage Co.* v. *Pungs,* 134 Mich. 79, 82 (95 N. W. 985) ; *Barbour* v. *Hurlburt,* 137 Mich. 534, 539 (100 N. W. 781) ; *Burchy* v. *Carpenter,* 181 Mich. 78 (147 N. W. 612). See *Prest-O-Lite Co.* v. *Widrig,* 179 Mich. 230 (146 N. W. 178). The statute does not change the rules of pleading. It is difficult, therefore, to understand how the first, second, and fourth reasons assigned equally support the proposition that the declaration is sufficient. If, however, we eliminate from the declaration, as some of plaintiff's argument implies we should do, all but the common counts in assumpsit, there seems to be authority for the ruling that the declaration is sufficient; that it supports the judgment. So far as the proofs are concerned, no breach of contract is claimed. Nor do I see any reason for holding that the contracts are void. Plaintiff says there is reason for his repudiation of them—for rescission. It was held in *Angell* v. *Loomis,* 97 Mich. 5 (55 N. W. 1008), that a recovery may be had on the common counts for money paid on a contract into which plaintiff was induced to enter by fraudulent representations of the defendant, and which plaintiff repudiated, citing *Johnson* v. *Insurance Co.,* 39 Mich. 33. *Fitzpatrick* v. *Hoffman,* 104 Mich. 228 (62 N. W. 349), *Murphy* v. *Dalton,*

139 Mich. 79 (102 N. W. 277), and *Silfver* v. *Daenzer,* 167 Mich. 362 (133 N. W. 16), are other cases which sustain the proposition that the plaintiff may in such a case recover under the common counts. It does not appear that defendants were surprised at the trial. The precise thing at issue between the parties has been determined by a jury upon all of the evidence either cared to submit.

The judgment is affirmed.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.