COOK v. DADE.

1. PLEADING—ACTION—COMMON COUNTS—BREACH OF CONTRACT—
   IMPLIED CONTRACT.
   Where the consideration in a contract is expressed, there
   can be no implied consideration; and, on nonperformance
   by defendant, plaintiff's action would be for breach of
   the contract and not on the common counts.

2. SAME—CONTRACTS—CONSIDERATION.
   Where the contract on the part of the defendant is not to
   pay money but to deliver specified articles of property,
   in an action to recover, such failure to deliver must be
   specially pleaded.

3. SAME—BILL OF PARTICULARS.
   A bill of particulars is not a pleading in any court; it
   may restrict, but cannot enlarge, the scope of recovery
   permissible under the declaration.

Error to Van Buren; Des Voignes, J. Submitted
April 12, 1916. (Docket No. 2.) Decided June 1, 1916.
Rehearing denied September 27, 1916.

Assumpsit in justice's court by Richard F. Cook
against William Dade for services rendered. From a
judgment for plaintiff, defendant appealed to the cir-
cuit court. Judgment for plaintiff. Defendant brings
error. Reversed.

*W. J. Barnard,* for appellant.

*Thos. J. Cavanaugh,* for appellee.

STEERE, J. Plaintiff recovered, in the circuit court
of Van Buren county, a verdict and judgment of $70
for feeding, caring for, and breaking a pair of western
horses, or ponies, intrusted to him for that purpose.

191 Mich.—36.

The action was commenced in justice's court, where the pleadings were oral; plaintiff declaring in assumpsit on the common counts, and defendant pleading the general issue. Plaintiff also furnished a bill of particulars totaling $115.80. Two charges were for feed and care of the horses for 11 weeks at $2.50 per week each, amounting to $55, and for breaking them $10 each, amounting to $20. Other items in the bill, for veterinary services, halters, damage, etc., were subsequently withdrawn and not submitted to the jury. It appeared without dispute that defendant was the owner of a span of western horses, called by the parties mustang ponies, weighing about 700 pounds each, one being 4 and the other 7 years old. The younger was not broken, and the value of efforts to that end with the older, which defendant pronounced "a little bit tricky," were apparently appraised by him at less than "ten cents." Plaintiff was a mail carrier residing in the village of Lawrence and served a mail route in that vicinity. Learning that defendant had these ponies, he spoke to him about them as they met upon the highway, proposing to take and break and use them on his mail route when the roads grew bad so that he could not use his auto. They do not fully agree as to what was said, but plaintiff's claim and testimony was that he took the horses under an agreement he would break them and in compensation for so doing could retain and use them long enough after they were broken to pay him for their breaking, care, and keep; that they were so difficult to break it was ten weeks before he could use them in his mail route and he had driven them during the eleventh week but three trips, when defendant took them from him against his protest but with his final acquiescence under a promise to return them in a week, which defendant did not do. Having thus shown an express contract involving no money consideration breached by defend-

ant, he does not declare upon such breach, but seeks to recover a money judgment for his services and keep of the horses rendered and furnished under that contract. Defendant made timely objection to evidence touching the agreement between the parties and what was done under it, requesting of the court when parties rested an instruction that plaintiff could not recover under the pleadings. The objections being overruled and request refused, plaintiff had judgment.

The theory under which it is claimed the common counts are sufficient is thus stated in plaintiff's brief:

"He fed and cared for the ponies and broke them and had them ready for use. The defendant took them away from him and refused to return them. He either got possession of them by stealth or upon a void agreement (because the promise to return them was made on Sunday), and thereby there arose an implied promise to pay the plaintiff for his labor, feed, etc. It was upon this theory that the case went to the jury, and we insist that there was no error."

Where the consideration is stated to be a certain thing, something else cannot be implied. An expressed promise to pay a particular consideration leaves no room for an implied one. Under plaintiff's evidence, his right of action arises out of an express agreement between the parties which involved no money consideration on either side and suggested no money value of the consideration promised by each. The wrong done plaintiff, as he claims it, was defendant's failure to keep his express promise, or a breach of his contract. While pleadings in justice's court are treated with liberality, the rule remains unmodified that the common counts will not support an action arising from violation of a special contract of this nature involving other than a money consideration, but the declaration must be for damages arising from the breach of such contract.

The distinction yet recognized in this State is clearly pointed out in the early case of *Thompson* v. *French*, 18 Tenn. (10 Yerg.) 452, where it is stated as the established principle:

"That in all cases where the consideration has been executed and where there is an express or implied promise to pay in money the value thereof, *indebitatus assumpsit* or debt is the proper remedy. But that in all those cases, where the consideration is not executed, or if it be, and the promise to be performed in consideration thereof, is not to pay money, but to do some other thing, that neither *indebitatus assumpsit* or debt will lie, and that the remedy is by a special action on the case."

In *Pierson* v. *Spaulding*, 61 Mich. 90 (27 N. W. 865), where it was sought to recover on the common counts for part performance of a contract involving a sale of property to be partly paid for in land, and the contract failed to provide for money payment in default of conveyance of the land, a bill of particulars also being filed, this court said:

"In our view, this suit could not be based on the common counts. The contract was a special one, and did not rest on a money price. * * * The sale was one in part for cash, and in part for a specific thing. A breach of the contract must be measured in damages by the amount of injury done, which would involve an inquiry into the actual and not the nominal value of the land. * * * Special contracts must be sued on specially. * * *"

It is urged in behalf of plaintiff that defendant was in no way misled by the pleadings, which were amplified by a bill of particulars showing the exact nature of plaintiff's claim, in substantiation of which reference is made to and excerpts quoted from *Nugent* v. *Teachout*, 67 Mich. 571 (35 N. W. 254), in which recovery was sustained under the common counts, aided by a bill of particulars, for defendant's failure to con-

vey certain real estate known as the Cadillac property in part payment for other real estate deeded to him, as he had orally agreed to do.

It may be conceded that the extracts quoted, standing isolated from the case and read in the abstract, tend in some particulars to give color to plaintiff's contention. But it was there pointed out that the common counts include a count for real property sold and conveyed, that a money price of $1,000 was fixed for the land plaintiff had conveyed, the major portion of which had been liquidated and the Cadillac property which defendant had sold to a third party was by an oral agreement, void under the statute of frauds, to be conveyed for the balance. Under those facts, with the price of the property plaintiff sold to defendant fixed and the balance yet due upon it ascertained, it was said "plaintiff could proceed under his declaration and bill of particulars in this case, the same as if he had specifically made a count for lands sold and conveyed as one of the money counts, or as if he had counted generally for lands sold and conveyed," distinguishing the case from those coming under the general rule where the contract is not to pay money, which the court fully recognizes and states as follows:

"When property, some specific thing or things, is to be delivered in payment for the lands, the agreement to so deliver, and the breach of the same, must be specially alleged; when a *special* contract has been *wholly* performed by one of the parties to it, and the other party can only perform his part by the *payment of money,* the *money* thus due can be recovered upon the common counts in assumpsit. But when the contract on the part of the defendant is *not* to pay money, but to deliver to the plaintiff specified articles of property, the right of the plaintiff to recover the money arises, not from the performance of the contract on his part, but from the *failure* of the defendant to deliver the property; consequently such failure must be specially pleaded. *Phippen* v. *Morehouse,* 50 Mich. 537, 540

[15 N. W. 895] ; *King* v. *Kerr*, 4 Chand. (Wis.) 159; *Bradley* v. *Levy*, 5 Wis. 400.''

The contract in the instant case was still subsisting and in force. Defendant yet had the power, and within his control the means, of performance. His alleged delinquency was failure or refusal to do what he had agreed to and could do—the breach of a contract which by its terms required no payment of money. Upon plaintiff's claim as disclosed by this record it was necessary for him to show a contract containing no promise to pay money and a breach of that contract out of which his damages and right of action arose. A claim for damages arising from breach of such a contract must be specially pleaded.

"A bill of particulars is not a pleading in any court. It may restrict, but cannot enlarge, the scope of the recovery permissible under the declaration," etc. *Applebaum* v. *Goldman*, 155 Mich. 369 (121 N. W. 288).

As was said in that case, which is in many particulars illuminative of the subject involved here, "we have no alternative except either to refuse to apply settled rules or to reverse the judgment."

The judgment is therefore reversed, with costs, and a new trial granted.

Stone, C. J., and Kuhn, Ostrander, Bird, Moore, Brooke, and Person, JJ., concurred.