## JANISZEWSKI v. BEHRMANN.

1. PLEADING—MOTION TO DISMISS—LIMITATION OF ACTIONS—WELL-PLEADED MATERIAL FACTS ACCEPTED AS TRUE.

Well-pleaded material facts set forth in plaintiff's declaration must be accepted as true in considering issue of which period of limitations within the statute of limitations applies, raised by motion to dismiss (CLS 1954, § 609.13).

2. SAME—BILL OF PARTICULARS.

A bill of particulars may limit the scope of permissible recovery under the declaration, but may not enlarge it.

3. LIMITATION OF ACTIONS—FRAUDULENT CONCEALMENT—PLEADING.

Plaintiff's claim that his cause of action against defendants had been fraudulently concealed so as to toll the statute of limitations *held*, not sustained by the well-pleaded facts in his declaration (CLS 1954, § 609.13).

4. TROVER AND CONVERSION—PURPORTED SALE UNDER WRIT OF EXECUTION.

Claim of declaration, as read in the light of plaintiff's bill of particulars that defendants' purported sale of property seized by them under writ of execution that had been levied on plaintiff's personal property in his store or meat shop was not in accordance with statutory requirements, is construed as based on tortious conversion of personal property; thus barred by 3-year statute of limitations (CLS 1954, § 609.13).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Pleading § 332.
[2] 41 Am Jur, Pleading § 268.
[3] 34 Am Jur, Limitation of Actions § 231.
[4] 53 Am Jur, Trover and Conversion § 166.
[5] 53 Am Jur, Trover and Conversion §§ 161, 162.
[6, 11] 4 Am Jur, Assumpsit § 25.
[8] 52 Am Jur, Trespass on the Case § 9 *et seq.*
[9] 41 Am Jur, Pleading § 188; 53 Am Jur, Trover and Conversion § 166.
[10] 1 Am Jur, Actions § 51.

5. SAME—ACTION—ASSUMPSIT—TRESPASS ON THE CASE.

One suing for the conversion of personal property into money has the election of suing either in assumpsit or in trespass on the case (CL 1948, § 611.1).

6. SAME—ACTION—SALE—ASSUMPSIT.

One who sues in assumpsit for the conversion of personal property by the defendant who has sold it is entitled to recover amount received and thereby prevent the defendant from profiting by his transaction as a result of a sale for an amount in excess of actual value.

7. SAME—PROMISE IMPLIED IN LAW—RETURN OF PROPERTY—VALUE.

The conversion of personal property by a defendant does not raise a promise implied in law to return the property or pay its value.

8. TRESPASS ON THE CASE—ACTION FOR CONVERSION.

The value of property wrongfully converted may be recovered in an action of trespass on the case seasonably brought.

9. ACTION—TORTS—QUASI-CONTRACT ACTION FOR VALUE.

Plaintiff whose cause of action was laid for tortious conversion of property would not be entitled to proceed on the quasi-contract theory to recover the value of the property.

10. SAME—TORTIOUS CONVERSION OF PROPERTY—VALUE.

A right of action for the value of property on the theory of quasi contract for tortious conversion of property still in the tort-feasor's possession is not recognized by the judicature act, other statutes or by decisions of the Supreme Court before or after the judicature act (CL 1948, § 611.1).

11. ASSUMPSIT—TORTIOUS CONVERSION OF PROPERTY—SALES—LIMITATION OF ACTIONS.

The judicature act permits an action of assumpsit to recover the value of property wrongfully converted by a defendant who has sold it and received value therefor but does not permit an action of assumpsit for the mere tortious conversion; hence, where plaintiff had delayed more than 3 years before commencing action, it was barred by the statute of limitations as to torts (CL 1948, § 611.1; CLS 1954, § 609.13).

SMITH, J., dissenting.

Appeal from Wayne; Culehan (Miles N.), J. Submitted October 12, 1955. (Docket No. 8, Calendar No. 46,526.) Decided March 1, 1956.

Action by Arthur Janiszewski, individually and doing business as Art's Sausage & Meat Shop, against Charles Behrmann, individually and as bailiff of the City of Detroit, Eli Friedman and Sumner Tallman for damages sustained on alleged fraudulent execution. Original declaration in trespass on the case. Amended declaration contained counts in trespass on the case for damages, trespass on the case upon promises, and the common counts. On motion, amended declaration dismissed. Plaintiff appeals. Affirmed.

*Harry J. Lippman* (*Benedict Segesta,* of counsel), for plaintiff.

*Shapero & Shapero,* for defendant Friedman.

*Irving Dworkin,* for defendant Tallman.

SMITH, J. (*dissenting*). This case arises out of an allegedly irregular execution sale. The amended declaration was framed in 3 counts. The first was captioned "Trespass on the Case for Damages" and the second "Trespass on the Case Upon Promises." The third set up the "Common Counts." Upon motion, the trial court dismissed the amended declaration on the ground that the suit had been barred by the statute of limitations. Plaintiff-appellant took a general appeal. We will, hereinafter, upon this appeal so arising, presume to be true all of plaintiff-appellant's well-pleaded allegations.

This is what happened: Defendant-appellee Tallman obtained a judgment against plaintiff-appellant in the common pleas court for the city of Detroit in the sum of $1,500 with costs. Execution was issued out of such court on April 12, 1951, on direction of defendant-appellee Friedman, and delivered to defendant-appellee Behrmann, a bailiff of the court.

It is further alleged, in essence, that on April 30, 1951, Friedman and Behrmann visited plaintiff-appellant Janiszewski's place of business, purporting "to levy execution," removed certain moneys from the cash register, and held then and there "a purported sale," such sale being held without publication of notice of the holding thereof, and without making an inventory or setting aside the statutory exemption. As a result thereof, it is alleged, plaintiff-appellant's business was closed, the doors locked, plaintiff evicted, and merchandise of the value of $500, together with fixtures valued at $5,000, were "converted by the said defendants herein, acting both jointly and severally, in fraud and conspiracy of the rights of your plaintiff, to their own use." It is also alleged that "in further fraud and conspiracy" the defendants caused a bill of sale to be executed by Behrmann to Tallman, reciting a consideration of $300, that "in further effort to conceal and cover up the fraudulent actions and the conspiracy engaged in" the defendant sold the same articles to one Gus Zaffini for $600, subject to liens, and that thereafter, on June 25, 1951, defendant-appellee Behrmann filed a return upon the execution issued, representing that no satisfaction had been had. So the matter rested until on or about May 18, 1954, at which time, plaintiff-appellant asserts, he learned for the first time of his statutory exemptions, that the return on the execution had been filed wholly unsatisfied and without mention of the sale above described, and of the other irregularities described. Subsequent to such date, and on May 24, 1954, "following notice of the alleged irregularities in said execution sale aforesaid," it is alleged that defendant-appellee Friedman filed a purported partial satisfaction of the judgment in the sum of $300, and defendant-appellee Behrmann, at about the same time, filed an amended return evidencing the sale

for $300. Plaintiff-appellant commenced his action on June 30, 1954.

It is plaintiff-appellant's theory that the first count of his amended declaration "was predicated in trespass on the case for damages," and that, as he puts it, "questions of fraud and misrepresentation were involved without physical or mental injury or without damage to specific property." He asserts that, under the statute relating to fraudulent concealments (CL 1948, § 609.20 [Stat Ann § 27.612] ), he had 2 years from the discovery of the fraud within which to bring his action.

The difficulty with plaintiff-appellant's theory as to his first count is that the gist of it, clearly set forth, is a conversion. It is not necessary for conversion that there be physical injury to tangible property; it is sufficient that there be, as here, an invasion of one's property rights by actionable wrong. The date of the conversion was the date of the purported sale, April 30, 1951, and the action for damages for the tort had been barred by the 3-year statute on June 30, 1954, the date of the filing of the suit. We find no fraudulent concealment of the alleged wrong. The actions of the defendants, who stood in no confidential or fiduciary relationship to plaintiff, were open and notorious. We approved, in *Weast* v. *Duffie*, 272 Mich 534, 539, the following statement of law respecting fraudulent concealment:

" 'The fraudulent concealment which will postpone the operation of the statute must be the concealment of the fact that plaintiff has a cause of action. If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know, pursuant to the rule hereinbefore stated (*i.e.*, by the exercise of ordinary diligence). * * *

" 'It is not necessary that a party should know the details of the evidence by which to establish his cause of action. It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim.' "

The exercise of reasonable diligence by plaintiff would have disclosed to him shortly after the conversion all of the facts and circumstances attendant thereon and the law applicable thereto. The first count is barred by the statute.

The second and third counts proceed upon a different theory. The second seeks recovery of damages for trespass in an action on the case on promises, and the third is framed in the common counts. Since it is abundantly clear that defendants actually made no verbal promises whatever to plaintiff as they (allegedly) took his shop, his money, and his fixtures, it is equally clear that the promise comes from without the parties. The fact of the matter is that the promise is implied by the law itself, arising out of the equities of the situation. "If," said the great Lord Mansfield, "the defendant be under an obligation, from the ties of natural justice, to refund; the law implies a debt, and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract." *Moses* v. *Macferlan,* 2 Burr 1005, 1008 (97 Eng Rep 676).

With the press of cases awaiting decision, we cannot trace here the development of this benign growth, the promise on the part of the wrongdoer, implied by the law itself, to make restitution of the fruits of his wrong. It would be hard to find, according to Ames, "a better illustration of the flexibility and power of self-development of the common law." *

* The History of Assumpsit, 3 Select Essays in Anglo-American Legal History (1909), 259, 297, 298.

Those interested will profit by a study of Ames, *supra,* 3 Street, The Foundations of Legal Liability, p 182 *et seq.,* and the great English landmark cases, *Slade's Case,* Cokes Reports, pt 4, 92-b (76 Eng Rep 1074), and *Moses* v. *Macferlan, supra.* Also of interest is *Manwood and Burston's Case,* 2 Leon 203, 204 (74 Eng Rep 479 [1588] ).

So it is, by now, ancient learning that the law implies the promise and that the breadth of the obligation is measured by the breadth of the wrong, not the mutual assent of the parties. As we held in *Moore* v. *Mandlebaum,* 8 Mich 433, 448:

> "We understand the law to be well settled, that the action of *assumpsit* for money had and received is essentially an equitable action, founded upon all the equitable circumstances of the case between the parties; and if it appear, from the whole case, that the defendant has in his hands money which, according to the rules of equity and good conscience, belongs, or ought to be paid, to the plaintiff, he is entitled to recover."

That phase of the problem before us, however, has no ancient solution. Like many complex inquiries it may be very simply stated: What is the applicable statute of limitations upon waiver of tort and suit in assumpsit?

The form of the question, as it is thus traditionally put, introduces confusion. What is actually involved is an election as to remedies, not a waiver of anything. Analogous is the action for specific performance of a land contract. It would be offensive to most lawyers to describe such action as a "waiver" of the breach of contract. (Woodward, The Law of Quasi Contracts, § 271.) Similarly, Restatement, Restitution, p 525, points out:

> "A person upon whom a tort has been committed and who brings an action for the benefits received

by the tort-feasor is sometimes said to 'waive the tort.' The election to bring an action of assumpsit is not, however, a waiver of a tort but is the choice of 1 of 2 alternative remedies."

Woodward, in his treatise "The Law of Quasi Contracts," *supra* (§ 271, p 438), puts the matter in these terms:

"The phrase 'waiver of tort,' commonly used to denote the election of assumpsit, is unfortunate. It implies that the *wrong* is waived, which is both inaccurate and misleading."

And continuing (§ 271, p 439):

"As is pointed out in the preceding section there is in reality an election between alternative obligations resulting from the commission of a tort—an obligation to pay such damages as the plaintiff has suffered, and an obligation to pay for such benefits as the defendant has received. Whichever obligation is chosen to be enforced, there can be no recovery without proof of the commission of a tort."

Our Court, in an early opinion written by Mr. Justice COOLEY, *Watson* v. *Stever,* 25 Mich 386, 387, speaks of the same election:

"If one has taken possession of property, and sold or disposed of it, and received money or money's worth therefor, the owner is not compellable to treat him as a wrongdoer, but may affirm the sale, as made on his behalf, and demand in this form of action the benefit of the transaction. But we cannot safely say the law will go very much further than this in implying a promise, where the circumstances repel all implication of a promise in fact. Damages for a trespass are not in general recoverable in assumpsit; and in the case of the taking of personal property, it is generally held essential that a sale by the defendant should be shown."

Thus under the common law it is clear that the owner of the property converted has an election: he may bring an action in assumpsit, based on the wrongdoer's "promise" (implied by law) to restore to him the value of the article, or he may bring an action for damages for the trespass. The latter is an action sounding in tort, the former in contract, 2 separate and distinct causes of action arising out of the single wrong. As pointed out by Lehman, J., in *Schmidt* v. *Merchants Despatch Transportation Co.*, 270 NY 287 (200 NE 824, 104 ALR 450):

"The single wrongful act which is asserted as the basis of recovery may constitute the breach of a number of obligations of diverse nature and origin. Then it may rest with the plaintiff whether he will assert as the basis of his right to damages the breach of one or more of such obligations; and the single right to recover such damages may then be alleged in different forms, each asserting as a basis of liability the breach of some duty or obligation. Each so-called 'separate and distinct cause of action' becomes in effect a 'count' in the allegation of a single wrong; and whether the statute bars recovery under any count depends upon the nature and origin of the liability asserted in that count."

With this background we approach the statutes to be considered. First, as to the action and the recovery thereunder. In the judicature act of 1915 (PA 1915, No 314) it is provided (CL 1948, § 611.1 [Stat Ann § 27.651] ), that although assumpsit, as an action at law, "shall be retained," it shall include as well the actions of covenant and debt, actions on the case for fraud and deceit, for trespass upon lands, for certain pecuniary penalties or forfeitures, and for cases involving the conversion of personal property into money. The last sentence of this section, as quoted by Mr. Justice Carr, provides: "In all such cases where assumpsit is brought, a promise

shall be implied by law to pay all just damages sustained by plaintiff and may be so declared upon." The assumpsit thus described, with its broad inclusions of various common-law forms of action, and its full scope of damage recovery, differs radically from the assumpsit known to the common law. By its employment an injured person may recover his full damages upon what is termed his "waiver" of the tort. In the case of conversion of goods, we do not restrict the owner to the price obtained by the tort-feasor upon sale, thus making the owner's recovery dependent upon the tort-feasor's shrewdness or stupidity, or the state of the market for converted goods. *Bowen* v. *Detroit United Railway,* 212 Mich 432. See, also, *Felder* v. *Reeth* (CCA), 34 F2d 744 (97 ALR 244), and cases therein cited. In such event it is not unreasonable to say that the owner waives the tortious taking and the subsequent sale and recovers the reasonable value of the property taken as if for goods sold and delivered.

Now for the statute of limitations. Our statute, unlike others, is not (generally speaking) framed in terms of specific transactions, or even forms of action. The policy expressed is very simple: All actions shall be commenced within 6 years after the cause of action accrues. (CLS 1954, § 609.13 [Stat Ann 1953 Cum Supp § 27.605].) There then follows a series of exceptions, with 1 of which we are concerned. Actions to recover damages, for injuries to person or property, it is provided, shall be brought within 3 years from the time the actions accrue. With these guides, and in the light of what has been said, we return to plaintiff-appellant's declaration. It is apparent that it combines both the elements of restitution and claims for "damages." Insofar as the latter elements are concerned, they are outlawed, clearly, by the 3-year statute, which runs, as we pointed out in *Hurst* v. *Charron,* 267

Mich 210, 214, "from the time the cause of action accrues."

But, as we have seen, 2 alternative remedies exist for the wrongdoer. To the extent that plaintiff-appellant relies upon the promise implied by law for restitution merely, the promise historically framed under a common count, and not for damages, it is our conclusion that the limitation of actions applicable to promissory obligations shall apply. No reason readily suggests itself why this particular promise, having its origins in equitable considerations, arising out of our solicitude that those who have suffered a wrong shall not lack for remedy, should, in comparison with other promissory obligations, suffer a shortened life. All of the considerations of equity which give rise to its birth should, on the contrary, assure it a normal life. When an owner abandons his damage claim and comes before us seeking only the return of what was wrongfully taken from him, we hear his plea with as much tolerance as the statute permits.

There is much to commend the statement of the Arizona court in *Andersen* v. *Thude,* 42 Ariz 271, 274 (25 P2d 272), that:

"It is the rule that if the complaint may be construed either as one in tort or one in contract, that it will be presumed to be the latter. *Consolidated Flour Mills Co.* v. *Muegge,* 127 Okla 295 (260 P 745); *Nathan* v. *Locke,* 108 Cal App 158 (287 P 550, 291 P 286). And while a defense raising the statute of limitation is recognized, it is never favored by the courts, and if there is doubt as to which of 2 statutes applies, the longest period is generally used. *St. Louis, I. M. & S. R. Co.* v. *Sweet,* 63 Ark 563 (40 SW 463); *Hughes* v. *Reed* (CCA), 46 F2d 435; *Matthys* v. *Donelson,* 179 Iowa 1111 (160 NW 944); *Trousdale* v. *Amerman,* 124 Kan 614 (261 P 826); 1 CJ, p 1015."

The court of appeals for the ninth circuit squarely ruled upon the issue in the case of *Lipman, Wolfe & Co.* v. *Phoenix Assurance Co.* (CCA), 258 F 544, 547, 548, in a carefully reasoned case citing many authorities. It held, in part, as follows:

"The second question here is which of the 2 following provisions of the statute of limitations of Oregon applies to the cause of action.

" 'Sec. 6. Within 6 years: An action upon a contract or liability express or implied. *  *. *

" 'Sec. 8. Within 2 years: An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not herein especially enumerated.'

"The action for money had and received has always been regarded as an action in assumpsit, based upon a promise to repay which the law implies, where one has possession of money which in equity and good conscience belongs to another. 'Having money that rightfully belongs to another, creates a debt; and whenever a debt exists without any express promise to pay, the law implies a promise, and the action always sounds in contract.' *Byxbie* v. *Wood,* 24 NY 607, 610. In that case it was held, that where one person fraudulently procures money of another, the law will imply a promise to repay it, and the injured party need not sue in tort, but may sue in assumpsit for money had and received. In *Brewer* v. *Dyer,* 7 Cush (61 Mass) 337, 340, the court said:

" 'The law, operating on the act of the parties, creates the duty, establishes the privity, and implies the promise and obligation, on which the action is founded.'

"That there is in such a case an implied promise to pay is generally recognized in the authorities, and it is so held in the State of Oregon. *First National Bank* v. *Hovey,* 34 Or 162 (55 P 535); *Hornefius* v.

*Wilkinson,* 51 Or 45 (93 P 474). In 1 Wood, Limitations (4th ed), pp 95, 96, it is said:

" 'Without multiplying instances, generally assumpsit lies for the breach of any simple contract, and in all cases where a contract or promise exists by express act of the parties, or where the circumstances are such that the law will imply a promise; and it may be said that under this head a recovery may be had for tortious acts properly embraced under the head of actions *ex delicto* in all those cases where, from the circumstances of the case, the law will imply a promise on the part of the wrongdoer to reimburse the party injured by his act.' * * *

" 'In cases where a tort may be waived, and assumpsit brought therefor, the latter action will lie, even though an action for the tort is barred by the statute.'

"Among the cases cited are *Ivey's Administrator v. Owens,* 28 Ala 641; *Lamb* v. *Clark,* 5 Pick (22 Mass) 193; *Kirkman* v. *Phillips' Heirs,* 7 Heisk (54 Tenn) 222; *Miller* v. *Miller,* 7 Pick (24 Mass) 133 (19 Am Dec 264); *Whitaker* v. *Poston,* 120 Tenn 207 (110 SW 1019); *Fanson* v. *Linsley,* 20 Kan 235; *Norden* v. *Jones,* 33 Wis 600 (14 Am Rep 782)."

See, also, House, Unjust Enrichment: The Applicable Statute of Limitations, 35 Cornell LQ 797; Corbin, Waiver of Tort and Suit in Assumpsit, 19 Yale LJ 221.

Essential to the above reasoning is the proposition that prior to the statutory enactments described, including the judicature act, and subsequent thereto, our law distinguished between (a) the remedy of return and (b) the remedy of damages. It is at this point that the thrust of Mr. Justice Carr's careful opinion becomes most acute. If, in fact, our law does not make this distinction, the plaintiff's position is imperilled, if not destroyed. The words of the statute are that "in all such cases," a promise shall be implied by law to pay "all just damages."

At this point we have a damage remedy. But what are the "all such cases" to which it is applicable? It is our position that the words cover the entire specified field of statutory assumpsit. Justice CARR's position is best stated in his own words: "It is obvious that the term 'such cases' as used in the last [quoted] sentence has reference to 'cases not otherwise specially provided for by law.'" (The cases to which he refers, "the cases not otherwise specially provided for by law," are the cases "where a pecuniary penalty or forfeiture shall be incurred by any person.") The issue as to the proper reading of the statute seems clearly drawn. Do the words "all such cases" (as to which the law implies a promise to pay "all just damages") refer solely to the penalty and forfeiture cases in the sentence preceding, or to the entire field of statutory assumpsit?

The importance of the remedy of general assumpsit, the common counts, that remedy which so strikingly illustrates the genius of the common law, its vitality, its "flexibility and power of self-development" (Ames, *supra*) is so great that we deem it advisable to subject this portion of the judicature act to critical examination. The real importance of the issue stems from the fact that the remedy of general assumpsit, the common counts, has been for centuries the expression on the law side of the conscience of equity. "This action, while legal in form, is equitable to the core." (McAllister, J., in *Herrmann* v. *Gleason* (CCA 6th), 126 F2d 936, 939. It is important to our people that such a remedy should never, by the eroding process of exception, or the misinterpretation of ancient cases, or statutory provisions, be reduced to impotence or encrusted with vitiating formalities. It is for that reason that we undertake a detailed comparison of the common counts with statutory assumpsit which, in the clauses here under consideration, had its origin, not with

the judicature act of 1915, but with the Revised Statutes of 1846. That particular provision will not long delay us. In the law of the period there had been much confusion about the collection of penalties and forfeitures. With respect to penalties alone, was the proper form of action, debt, assumpsit, trespass or case? Did covenant have an application? In the enforcement of forfeiture equally difficult questions arose. Our legislature cut through these difficulties as to forms of action by providing (RS 1846, chap 128, § 1) that:

"In all cases not otherwise specially provided for by law, where a pecuniary penalty or forfeiture shall be incurred by any person, and the act or omission for which the same is imposed, shall not be also a misdemeanor, such penalty or forfeiture may be recovered in an action of debt, or in an action of assumpsit."

The same language has been carried forward to the present time. Chapter 11, § 1, of the judicature act (CL 1948, § 611.1 [Stat Ann § 27.651]) provides, with respect to penalties and forfeitures, as follows:

"In all cases not otherwise specially provided for by law, where a pecuniary penalty or forfeiture shall be incurred by any person, and the act or omission for which the same is imposed, shall not also be a misdemeanor, such penalty or forfeiture may be recovered in an action of assumpsit."

This action by the legislature was the first significant broadening of the action of assumpsit. Others followed. Prior to the turn of the century the matter of trespass on lands, with the cutting of timber thereon, had presented a problem of considerable magnitude in this State. It had come before the Court in *Watson* v. *Stever, supra,* a case in which the plaintiff had sued the defendant in assumpsit to recover the value of logs which defendant had

converted but not sold. Assumpsit was held to be an improper remedy, the holding resulting in the statute of 1875 which was passed shortly thereafter to remedy the situation. It provided (PA 1875, No 165) that:

"Sec. 1.   In all cases where a party has a right of action for the taking of timber or other trespass on lands, it shall be lawful for the party having such right of action to waive the tort and bring assumpsit.

"Sec. 2.   When tort is waived, as provided in the preceding section, the plaintiff may commence his suit by attachment against the property of the defendant, as in other cases, and his affidavit for such attachment shall state the amount due him as near as may be, and the fact that the damages are unliquidated shall not prevent the bringing and maintaining of such writ."

There was, in addition, still another legislative broadening of assumpsit preceding the passage of the judicature act. The common-law remedies for fraud and deceit were highly technical. The opinion in *Hallett* v. *Gordon,* 122 Mich 567, 572, points out some of the difficulties encountered under the common law.

"When the action is brought against the contracting party, there may be cases where the action may be in tort for the fraud, or, by treating the fraudulent representations as warranties (when that can be done), *assumpsit* may be sustained. It is said that the distinction between actions in *assumpsit* and on the case has, however, been largely done away with, and the present doctrine is that the buyer may have his remedy by an action on the warranty, sounding either in tort or in *contract.*"

There were other procedural and substantive impediments, but we need not burden this opinion with a recital thereof. Again the legislature acted. PA

1897, No 195 (contemporaneously described in *Hallett* v. *Gordon, supra,* 573, by our Court, as "illogical and paradoxical" which, in truth, it was, though highly efficacious as a remedy), provided:

"Sec. 1. That in all cases where, by the fraudulent representations or conduct of any person, an injury has been or shall be produced, either to the person, property or rights of another, for which an action on the case for fraud or deceit may by law be brought, an action of assumpsit may be brought to recover damages for such injury, and in all such cases a promise shall be implied by law to pay all just damages arising from such fraud or deceit, and may be so declared upon.

"Sec. 2. The causes of action specified in section 1 of this act shall, upon the death of the person injured, survive to his personal representatives."

Such, in brief, was the situation with respect to statutory assumpsit prior to the passage of the judicature act of 1915. The assumpsit remedy had been extended by the legislature to a number of diverse situations in which, primarily for historical reasons, the remedy of common-law assumpsit had been denied. (Thus the traditional denial of quasi-contractual recovery for the value of the use and occupation of land turned in part on the fact that wager of law was not allowed defendants in actions of debt for rent. See Ames, Assumpsit for Use and Occupation, Lectures on Legal History, p 165; 2 Durfee and Dawson, Restitution at Law and in Equity, p 13.)

A fundamental distinction must here be observed, and stressed: by the use of the common counts the plaintiff may have a restitutionary remedy rather than a damage remedy. As Street points out in his Foundations of Legal Liability, Vol 3, p 196, the assumpsit remedy, in fact, was superior to trover in some respects, since the latter was delictual in form and could not be maintained against a personal

representative after the death of the tort-feasor. *Hambly* v. *Trott,* 1 Cowp 371 (98 Eng Rep 1136). If we have a tortious conversion and the article has been sold, the victim may sue in assumpsit, in which event he recovers "the benefit of the transaction." (COOLEY, J., in *Watson* v. *Stever, supra,* 387.) On the other hand, he may treat the convertor as a wrong-doer and sue for damages, in which case the employment of the damage remedy results in the application of all elements of damage suffered by the plaintiff and is thus, from the standpoint of money recovery, a more comprehensive remedy. The distinction described is ancient in the law and has been recognized for many years in our jurisprudence. Justice COOLEY pointed it out with clarity and in detail in *Watson* v. *Stever, supra,* 387. "Damages for a trespass," he observed, "are not in general recoverable in assumpsit." And in *Nelson* v. *Kilbride,* 113 Mich 637, 639, the Court spoke thus in ruling in an action in assumpsit, for money had and received:

"The difficulty with the defendant's contention is that he insists on assuming that this is an action brought to recover damages for a trespass, which it is not, but is an action brought to recover money which the law regards as received for the use and benefit of the plaintiff, because it is the purchase price of his property."

Prior to the passage of the judicature act, then, we had, among other remedies, general assumpsit (the common counts by means of which restitution might be obtained) and we had (with respect to certain offenses) a statutory assumpsit by means of which full damages were recovered. The judicature act, in chapter 11, § 1 (CL 1948, § 611.1 [Stat Ann § 27.651]), entitled: "Forms of Action," gathered the aforedescribed statutes into one comprehensive section. It included the assumpsit for forfeiture

and penalties authorized in 1846, the assumpsit for trespass on lands authorized in 1875, and the assumpsit for fraud and deceit authorized in 1897. In addition it specifically covered the case of the conversion of personal property into money. "In all such cases where assumpsit is brought," it then provided, "a promise shall be implied by law to pay all just damages sustained." Thus the earlier statutory solution of the problem of the money recovery in the statutory assumpsit actions was retained by the judicature act.

We return now to the question posed: When the judicature act of 1915 says that "in all such cases where assumpsit is brought, a promise shall be implied by law to pay all such damages sustained by plaintiff and may be so declared upon," do the words "all such cases" comprehend the whole described field of statutory assumpsit? To Justice CARR it is obvious that the term has reference to "cases not otherwise specially provided for by law," *i. e.,* those where a pecuniary penalty or forfeiture has been incurred.

To us it is not obvious. Just why the legislature should in 1915 restrict the statutory assumpsit remedy of "all just damages" to penalties and forfeitures alone, and abandon it with respect to the other statutory assumpsits, particularly the fraud remedy, is not clear to us. It seems particularly puzzling in view of the fact that, for reasons apparently involving the nature of penalties and forfeitures, the statutory extension of assumpsit to that field was the only similar legislative enactment which did not originally embody some language respecting "damages." To us it seems clear that what the legislature was doing here (with respect to these remedies) was merely gathering them together in one section. The damage remedy of statutory assumpsit was retained. If it were availed of, one might obtain by

its use, his full damages. It continued to run hand in hand with the common counts, which might be used for restitution. Each had its function.

The language of the cases admits of no other conclusion. Both forms of assumpsit were pleaded and employed subsequent to the enactment of the several statutory assumpsit remedies, and the same situation obtained subsequent to the passage of the judicature act. The distinction is clearly made in numerous cases. See *Barbour* v. *Hurlburt,* 137 Mich 534, 539, 540 ("The plaintiffs also had a right of action to recover damages for the fraud or deceit either through an action on the case or an action of assumpsit, under CL 1897, § 10421. In neither of these cases would the common counts be a proper declaration. \* \* \* The third remedy rests on the theory of an affirmation of the purchase at the price actually paid, and the recovery back from the defendant of the money not used in accordance with the contract. We see no reason why such recovery could not be had upon the common counts") ; *Burchy* v. *Carpenter,* 181 Mich 78, 82 (declaration upon common counts in assumpsit "[2] \* \* \* under the declaration as framed he cannot recover damages for fraud and deceit, but for that purpose must employ a special count") ; *Billig* v. *Goodrich,* 199 Mich 423, 429 ("the statute referred to [permitting waiver of tort and suit in assumpsit] permits an action of assumpsit to be brought in certain cases, but it does not permit a recovery upon the common counts. Quite the contrary. \* \* \* The statute does not change the rules of pleading. \* \* \* Recovery may be had on the common counts for money paid on a contract into which plaintiff was induced to enter by fraudulent representations of the defendant") ; *Kirker* v. *Larson,* 254 Mich 648, 651 ("it was not improper to add the common counts to the special count in assumpsit

arising out of implied promises of repayment on account of fraud").

We conclude, then, that the extension of the assumpsit remedy by statute to wrongs as to which the remedy was not theretofore available did not destroy either the use or the function of the historical common counts.

With much of what Mr. Justice CARR observes respecting the necessity for sale, in event of conversion of personal property, we are in complete accord. We long required a sale as a prerequisite to a plaintiff's waiver of tort and suit in assumpsit at the common law. (Statutory assumpsit under the judicature act retains this requirement.) Just how much vigor is left in the ancient requirement (which, again, had its origin in historical considerations, with much emphasis on the common-law concept of "debt") is doubtful after our decision in *Nelson & Witt* v. *Texas Co.*, 256 Mich 65, a case in which recovery was had under the common counts, for money had and received, the decision not being grounded upon contract relations and no sale by defendant appearing in the record. We need not, however, vex the question, for in the case before us a sale by defendants is well pleaded.

Nor can we conclude that in event of sale the Michigan law restricted the aggrieved party, in his action in assumpsit, merely to the amount received. He is entitled, of course, to such amount, and we have so held. But we have never squarely held that this amount is his ceiling of recovery. The issue is important in this case because it is pleaded, in effect, that the sale was at a give-away price. Our heretofore expressed conviction that we do not restrict the victim of the tort to whatever meager proceeds the sale may have brought is clear from Justice COOLEY's careful analysis in *Watson* v. *Stever, supra,* in which it is pointed out that, should there have

been a sale, the assumpsit action is for the "benefit of the transaction." Thus we get into the quasi-contractual action for benefits received. In such an action, "equitable to the core," is the wrongdoer to be permitted to set up his own wrong as a defense? Will he be allowed to say that he is not liable for the fair value because of his tort? That he wilfully sold for a dime instead of a dollar and, hence, the "benefit of the transaction" is a dime only? That the injured party's recovery, in an action born of the conscience of equity, will be limited, regardless of fair value, by a figure imposed by the wrongdoer? It is our conviction that this is not the law of this State. Our Court had heretofore considered an analogous case, the conversion of personal property obtained, not by tortious act but through contract. In this case, if one contracting party waives the tort of the other party and sues him in assumpsit, the injured party's recovery is not the value to the wrongdoer but "the value of the property converted in the open market at the time and place of conversion." *Bowen* v. *Detroit United Railway,* 212 Mich 432, 437 (assumpsit on all the common counts). It does not commend itself to us that we should be more tender with a wrongdoer whose initial acquisition of the property was tortious than with one who, at least, came into original possession of the property with consent. If the latter converts, he must pay the fair market value of the property. Will we permit the tortious taker to escape by paying only the give-away price at which he sold, regardless of fair value? The Restatement, Restitution, we note (section 151), is in agreement with our view. "The measure of recovery for the benefit received (see COOLEY, *supra*) by the other," it says, "is the value of the property at the time of its improper acquisition, retention, or disposition."

A question remains as to the proper construction of plaintiff's pleadings. To Justice CARR it is apparently clear that plaintiff is seeking damages for a tort, and that he has elected his remedy. "In the instant case," he says: "plaintiff has expressly declared in tort and sought recovery for the damages sustained by him. By so doing he elected his remedy."

If this is correct, if the plaintiff has merely brought here an action in tort for damages, we have wasted much time. The action is outlawed. But the form of the statement assumes the very answer we have so diligently sought. Has plaintiff, in truth, expressly declared in tort? Assuredly he has in his first count. If that stood alone we would have no problem. But his second count is at least captioned in the historical language of special assumpsit, while the third is the common counts. Is it correct, as to these latter, to say that because the plaintiff relates in detail the series of wrongs done him that he has declared in tort? We cannot so hold. The facts constituting the tort are set out to show why the law should (and does) imply a promise. There is no contract in fact between the parties. Unless plaintiff can show that the defendants are guilty of some wrong, plaintiff has no cause of action against them. As Keener put it, in his historic Treatise on the Law of Quasi-Contracts, p 160, "when the assumpsit is brought, it is only by showing that the defendant did a tortious act that the plaintiff is able to recover." We so held, long ago. "It is no ground of objection that the facts constituting the wrong are stated in the count wherein the tort is waived; they must be proved to entitle the plaintiff to recover and therefore must be stated in the declaration." *Tregent* v. *Maybee,* 54 Mich 226, 227.

Nor is it necessary that plaintiff, to make use of the historic general assumpsit, must utter the magic

incantation, "I waive the tort." For many years we have cared not for the verbal talisman. A declaration in assumpsit for the value of personalty, where the tort was waived, we held in *Aldine Manufacturing Co.* v. *Barnard,* 84 Mich 632, 641, need not "set forth the waiver of the tort."

We do agree with Justice CARR that "no contractual relation between the parties, either express or implied, is asserted." But need such assertion be made? To what end? After all, it did not exist. It is the law which is quick to fasten the yoke of contract on the wrongdoer. It is law which makes the implication of the promise. The wrongdoer is asserting to all who will listen that he made no contract, that the idea of contract never entered his head, that what he was doing was strong-arming this plaintiff, reducing his goods and chattels to possession, converting his property. We nod. That, we say, is precisely why we imply the promise.

In essence our problem is a very simple one: To what extent do the common counts retain their ancient vitality in the modern law of this State? When a citizen comes before us with a recital of wrongs as grievous as those here presented, which we must at this point assume to be true, will we, with Lord Mansfield, imply the debt and give the action in assumpsit, "founded in the equity of the plaintiff's case, as it were upon a contract"?

We say we do. Such action, and restitution under it, has been in accordance with the law of this State from the earliest times (see Justice COOLEY, *supra*) to the present. The common counts were not watered down by the judicature act, or the prior statutory enactments. They retain their full vigor, a threat to the wicked, a promise of restitution to those despoiled. When will we close our doors to the victim? The legislature has given its answer. Actions "to recover damages" shall be brought in 3

years. But is this an action for damages? Or for restitution?

In answer to that, the ultimate criterion is not what the action is entitled. *Hurst v. Charron, supra.* We have left in the far distant past the doctrine that relief in our courts depends upon any form of words. We now look to the substance of the action here, whether it be for damages or for restitution. To the extent that plaintiff seeks damages the 3-year statute applies. But to the extent that he seeks merely restitution he is subject to no such limitation. The wrongdoer thus cannot, to defeat his obligation to return the value or benefit of the goods, set up and rely on his own tort in order to obtain a shorter statute of limitations.

The order should be reversed in part and remanded for further proceedings not inconsistent herewith. Costs to appellant.

Carr, J. This action was brought in circuit court on June 30, 1954, recovery being sought on the basis of conversion of personal property more than 3 years previously. The question presented is whether the prosecution of said action was barred by the statute of limitations relating to actions to recover damages for injury to person or property. By the provisions of said statute (CLS 1954, § 609.13, subdivision 2 [Stat Ann 1953 Cum Supp § 27.605]) an action of this character must be brought within 3 years from the time it accrues. In considering the issue presented, well-pleaded material facts set forth in plaintiff's declaration must be accepted as true.

Plaintiff's amended declaration contains 3 counts. The first is in trespass on the case and alleges that on the 28th of March, 1951, defendant Tallman obtained a judgment against plaintiff in the common pleas court of the city of Detroit in the sum of $1,500 and costs. Thereafter a writ of execution was issued

on the judgment and levied on certain personal property in plaintiff's store or meat shop. It is further averred that a purported sale of the property seized was held, but not in accordance with statutory requirements. In substance, plaintiff asserts in his declaration that defendants wrongfully converted the property taken under the writ. The right of action is predicated on such conversion. There is no showing that the judgment was not valid, or that the writ of execution was not properly issued. Plaintiff asserts in the first count his right to recover damages, including those suffered because of incidental injury to his business resulting from the conversion of said property.

The second count of the declaration repeats the averments as to the tortious conduct of the defendants, and likewise asserts the right to recover damages because of the losses sustained by plaintiff. The caption of the count indicates that it was intended to be in trespass on the case upon promises, and the claim is made therein that following the conversion a sale was made for the sum of $600. However, the count is not based on any claim of right to recover that sum, but on the theory of damages sustained as a result of the alleged tort.

Count three of the amended declaration refers to the "several premises" set forth in the preceding count as its basis, and alleges indebtedness on the part of defendants to the plaintiff in the sum of $50,000. Incorporated therein are 5 common counts in assumpsit, namely, for work done by plaintiff for defendants, for money loaned by plaintiff to them, for money paid out by plaintiff for the use of defendants, for money had and received, and on account stated. A further claim is made indicating that plaintiff's declaration was based especially on fraud, deceit and conspiracy as in the second count of the declaration set forth, and damages in the same sum

as mentioned in the first and second counts are claimed. It clearly appears from the averments of the declaration that recovery was sought, under each count, on the basis of the tortious conversion of plaintiff's property and not because of any contractual relation, express or implied.

Annexed to the declaration is a bill of particulars setting forth the items, 4 in number, for the recovery of which the action was brought. The first 3 items assert the right of recovery because of specific personal property wrongfully converted by the defendants. A fourth item refers to the loss of profits in his business suffered by plaintiff by reason of the tortious conduct charged. The bill of particulars emphasizes the fact that plaintiff's alleged cause of action was based on the conversion of his property and the incidental damage resulting therefrom. The incorporation of the common counts in the declaration, together with the reference to the averments of tortious conduct as the basis thereof, added nothing to the special count. The rule is well settled in Michigan that a bill of particulars may limit the scope of permissible recovery under the declaration, but may not enlarge it. *Applebaum* v. *Goldman,* 155 Mich 369; *Cook* v. *Dade,* 191 Mich 561.

Motions by defendants to dismiss the declaration were denied, and thereupon answers were filed denying the material averments of plaintiff's alleged cause of action. On leave granted by the court, said answers were amended by adding thereto pleas of the statute of limitations, above cited. This was followed by motions to dismiss based thereon, and the trial court, concluding that the action was one to recover damages for injury to property, granted the motions. Plaintiff has appealed.

On behalf of plaintiff it is urged that his right to prosecute his cause of action was not barred by the statute for the reason that material facts constitut-

ing the basis of said right were wrongfully and fraudulently concealed from him by defendants. The facts well pleaded by plaintiff do not support such claim. Obviously plaintiff knew what had occurred, and if uncertain as to any of the details of defendants' wrongful conduct he was placed on inquiry with reference thereto. Defendants owed him no duty to advise him as to his legal rights. The statute of limitations was not tolled by fraudulent concealment of the cause of action. We are in accord with the conclusion of the trial judge that the statute barred the prosecution of the cause of action set forth in the declaration. As before stated, plaintiff's declaration, read in conjunction with the bill of particulars, must be construed as based on tortious conversion of personal property.

The judicature act of the State,* applicable to civil actions, provides in chapter 11, § 1, thereof (CL 1948, § 611.1 [Stat Ann § 27.651]), that in certain cases, including the conversion of personal property into money, the plaintiff may sue either in assumpsit or in trespass on the case. In accordance therewith the aggrieved party, as was the situation prior to the adoption of the judicature act in 1915, has an election to sue in tort to recover the damages sustained by him as a result of the wrongful conversion of his property or, if such property has been sold by the wrongdoer, he may waive his right to proceed in trespass on the case and declare in assumpsit. In such event he is deemed to have elected to regard the tort-feasor as having made such sale for the owner's use and benefit and is entitled to recover the amount received. By following such procedure the one guilty of the conversion may be prevented from profiting by his transaction as a result of a sale for

---

* PA 1915, No 314, as amended (CL 1948, § 600.1 *et seq.,* as amended [Stat Ann and Stat Ann 1953 Cum Supp § 27.1 *et seq.,* as amended]).

an amount in excess of the actual value. In the instant case plaintiff has expressly declared in tort and sought recovery for the damages sustained by him. By so doing he elected his remedy. In *Rutan* v. *Straehly*, 289 Mich 341, 348, in commenting on the statute, it was said:

"Plaintiff did not waive the tort, therefore her counts in assumpsit became surplusage."

In support of such statement the prior case of *Kirker* v. *Larson*, 254 Mich 648, was cited.

As before indicated, plaintiff's declaration, read in the light of the bill of particulars, is based on the alleged tortious conversion of personal property by defendants. No contractual relation between the parties, either express or implied, is asserted. I cannot agree with the conclusion of Mr. Justice SMITH that the case should be remanded for trial on the theory of a contract implied by law, that is, on the basis of quasi contract. Such conclusion apparently rests on the theory that when defendants converted plaintiff's property after it had been seized under the writ of execution the law implied a promise on their part to return it or pay its value, and that the right to maintain an action in assumpsit based either on a special count or on an appropriate common count is not related, as a matter of law, to the tortious conversion. That the value of property wrongfully converted may be recovered in an action of trespass on the case, if seasonably brought, is not open to question. The remedy in tort is more favorable to the aggrieved party in some respects than is the asserted right of action in assumpsit, although as a general rule the measure of damages is the value at time of conversion. *Hudson* v. *Enichen*, 308 Mich 79, and prior decisions there cited.

Without discussing the matter at length, it must be said that the plaintiff in the instant case was not

entitled to proceed on the quasi-contract theory to recover the value of the property, nor may he now do so, notwithstanding that his action in tort is barred by the statute of limitations. As before emphasized, plaintiff's cause of action, as set out in his pleading, rests on the claim of a tortious conversion and the right to recover damages therefor. He sought to pursue his remedy in tort, claiming that the running of the applicable statute of limitations had been tolled by fraudulent concealment. Until barred by the statute he had an adequate remedy in tort for the alleged injury sustained by him. His declaration was framed on that theory.

Furthermore, a right of action for the value of the property on the theory of quasi contract in cases of tortious conversion is not recognized by the judicature act, above cited, by any other legislative enactment in this State, or by decisions of this Court. The right to maintain an action in assumpsit where contractual relations exist between the parties is not involved here. Prior to the adoption of the judicature act of 1915 it was repeatedly recognized by this Court that damages for the conversion of property could not be recovered in an action of assumpsit, subject to the exception that if the wrongdoer had sold the property the aggrieved party might sue to recover the amount received. In *Watson* v. *Stever,* 25 Mich 386, 387, 388, Justice Cooley, speaking for the Court, said:

"If one has taken possession of property, and sold or disposed of it, and received money or money's worth therefor, the owner is not compellable to treat him as a wrongdoer, but may affirm the sale as made on his behalf, and demand in this form of action the benefit of the transaction. But we can not safely say the law will go very much further than this in implying a promise, where the circumstances repel all implication of a promise in fact. Damages for

a trespass are not in general recoverable in assumpsit; and in the case of the taking of personal property, it is generally held essential that a sale by the defendant should be shown: *Jones v. Hoar,* 5 Pick (22 Mass) 285; *Berkshire Glass Co. v. Wolcott,* 2 Allen (84 Mass) 227 (79 Am Dec 781); *Stearns v. Dillingham,* 22 Vt 624, 627 (54 Am Dec 88); *Mann v. Locke,* 11 NH 246, 248; *Smith v. Smith,* 43 NH 536; *Willet v. Willet,* 3 Watts (Pa) 277; *Pearsoll v. Chapin,* 44 Pa 9; *Guthrie v. Wickliffe,* 1 AK Marsh (8 Ky) 83; *Fuller v. Duren,* 36 Ala 73 (76 Am Dec 318); *Sanders v. Hamilton,* 3 Dana (33 Ky) 550, 552; *Barlow v. Stalworth,* 27 Ga 517; *Pike v. Bright,* 29 Ala 332; *Tucker v. Jewett,* 32 Conn 563; *Emerson v. McNamara,* 41 Me 565; *Morrison v. Rogers,* 2 Scam (3 Ill) 317; *O'Reer v. Strong,* 13 Ill 688; *Elliott v. Jackson,* 3 Wis 649. The case of *Fiquet v. Allison,* 12 Mich 328 (86 Am Dec 54), on which reliance was placed by defendant in error, is clearly distinguishable from this. There the parties stood in contract relations as tenants in common in respect to the property in question; and when the defendant appropriated his co-tenant's share, and refused to recognize his right therein, he was, as the court pointed out, guilty of breach of a duty which the law implied from his express contract. This case presents no corresponding feature, and to sustain an action as upon an implied contract here, would be to disregard the primary distinctions in the forms of action."

Citing *Watson v. Stever,* it was declared in *St. John v. Antrim Iron Co.,* 122 Mich 68, 69, that:

"When the defendant has converted property of the plaintiff into money or money's worth, the plaintiff may waive the tort, and sue in assumpsit, treating the sale as made on his behalf. So, where defendant holds possession of property by virtue of contract relations with plaintiff, and converts such property, the plaintiff may, at his election, proceed in assumpsit. These are the only cases in which the

plaintiff has election, under the common law." (Citing prior decisions.)

In accord with the foregoing is *Lyon* v. *Clark,* 129 Mich 381, where, in denying the right of the plaintiff to recover in assumpsit, it was said:

"But the present action is assumpsit, and it is further urged that, even though trover might have been proper, assumpsit will not lie to recover the value of property wrongfully converted, and which the tort-feasor still retains in his possession. The rule in this State is well settled that, to entitle one to maintain assumpsit against a tort-feasor who converts personal property to his own use, it must appear that the property has been converted into money or money's worth. This is upon the ground that the owner of the property has the right, at his election, to treat the tort-feasor as his agent in making the sale, and to affirm the contract as made on his behalf, and sue for the proceeds as money had and received for the plaintiff's use. See *Watson* v. *Stever,* 25 Mich 386. The only class of cases in which the remedy has been extended is where the remedy has been extended by statute, as in case of trespasses on real property (CL 1897, § 11207), and in cases where the property of plaintiff has passed into possession of defendant by virtue of some contract relation between plaintiff and defendant. This case does not come within either of the last-named classes, and it would follow that, as to the property not transferred, the action of assumpsit is not the proper remedy."

See, also, *Nelson* v. *Kilbride,* 113 Mich 637; *Plefka* v. *Detroit United Railway,* 147 Mich 641; *Nelson & Witt* v. *Texas Co.,* 256 Mich 65.

Such was the situation when the judicature act of 1915 was enacted, codifying the law with respect to civil actions. It is a fair inference that the framers of the act, and the legislature in adopting it, intended

a continuance of the principles applicable to a case presenting the questions involved in the instant controversy. Accordingly specific authority to sue in tort was granted in cases of the wrongful conversion of property, with a privilege of election to waive such right in cases where the wrongdoer had sold the property and received value therefor. Beyond this the act does not go. There is nothing in it indicating a recognition of a right to sue the tort-feasor, for the value of property converted, on the theory of quasi contract. The provisions of the judicature act cannot be reconciled with such theory. While the action of assumpsit was broadened to some extent by substituting it for the common-law actions of debt and covenant, and in other respects not material here, the right to recover damages in such form of action for the conversion of personal property was not specified, except when the wrongdoer has sold the property and received value therefor.

Attention has been directed to certain provisions in CL 1948, § 611.1 (Stat Ann § 27.651), which provides, in part, as follows:

"Provided, however, That in case of trespass on lands, and in cases where an action on the case for fraud or deceit may by law be brought, and in cases of the conversion of personal property into money, the plaintiff may bring and maintain either an action of assumpsit, or an action of trespass on the case. In all cases not otherwise specially provided for by law, where a pecuniary penalty or forfeiture shall be incurred by any person, and the act or omission for which the same is imposed, shall not also be a misdemeanor, such penalty or forfeiture may be recovered in an action of assumpsit. In all such cases where assumpsit is brought, a promise shall be implied by law to pay all just damages sustained by plaintiff and may be so declared upon."

It is obvious that the term "such cases" as used in the last sentence has reference to "cases not otherwise specially provided for by law." As before pointed out, the rights of the aggrieved party in any case where property is converted tortiously are specifically covered. It is apparent that the remedy in trespass on the case was deemed adequate. The provision made with reference to an assumpsit action in the event of a sale of the converted property by the wrongdoer was intended to give to the owner of the property a privilege that he might exercise if he deemed it to his advantage to do so.

In the instant case plaintiff sought to pursue his remedy in tort but failed to institute action within the period fixed by the statute of limitations. Under the declaration and accompanying bill of particulars, and under applicable provisions of the judicature act and controlling principles of law as pointed out in prior decisions of this Court, plaintiff is not entitled to a trial in an action of assumpsit on the theory of a contract implied by law. The rule followed in cases determined prior to the judicature act did not recognize such right of action and the rule was not changed by the statute.

The order of the trial court dismissing the case is affirmed.

DETHMERS, C. J., and SHARPE, REID, and KELLY, JJ., concurred with CARR, J.

BOYLES, J. (*concurring in affirmance*). In this case, I choose to shear away all the arguments and citations in support of opposing viewpoints, which rely on statutory and common-law precedents and decisions. The relatively unimportant but only real issue in the case is this:

Under the material facts and circumstances as alleged by the plaintiff in his declaration (which must be taken as true), should the plaintiff be allowed to pursue his suit, started more than 3 years after his cause of action accrued?

If, by fairly construing the averments in plaintiff's amended declaration, his action is one to recover damages for injury to property, it is barred by the statute. See subdivision 2, CLS 1954, § 609.13 (Stat Ann 1953 Cum Supp § 27.605).

The declaration, in full, is in the record. The first of the 3 counts, captioned "Trespass on the case for damages," sets up, in 13–1/2 pages in the printed record, in quite minute detail, the facts and circumstances on which the plaintiff relies to recover damages, by alleging wrongful acts and false, fraudulent, wilful and intentional concealment thereof by the defendants. Said count concludes with a prayer for damages by reason thereof. The second count, captioned "Trespass on the case upon promises," in approximately 14 printed pages reiterates the allegations set up in the first count, and concludes that by reason thereof the plaintiff not only did

"lose and was deprived of certain moneys to him belonging and his certain goods, wares and merchandise and the value thereof to him belonging, but in addition thereto * * * did lose great gains and profits that otherwise would have come to him * * * by reason whereof your plaintiff did sustain and was damaged in this regard in a large and substantial sum * * * for the recovery of which this action under count 2 of this declaration is brought."

In count 3, captioned "Common counts,"* the declaration alleges:

---

* Meaning, of course, common counts *in assumpsit*. See 3 Mich Law & Practice, Assumpsit, p 100. There are no "common counts" in tort.

"That by reason of the said several premises in preceding count 2 described, the within named defendants * * * are indebted unto your plaintiff in the sum of $50,000 * * * in a like sum of money for the price and value of work done by the plaintiff for the defendants * * * in a like sum of money then and there lent by the plaintiff to the defendants * * * in a like sum of money then and there paid by the plaintiff for the use of the defendants * * * in a like sum of money then and there received by the defendants for the use of the plaintiff * * * and in a like sum of money then and there found to be due from the defendants to the plaintiff on an account stated between them.

"And your plaintiff herewith declares in an action of assumpsit on all the common counts and especially on fraud, and fraud and deceit and fraud and conspiracy all in preceding count of this declaration described * * * and for the recovery of which this suit is brought."

Apparently the declaration, in its entirety, seeks to avoid the impact of the 3-year statutory limitation against plaintiff's suit, and also to rely on the "fraudulent concealment" exception to the 3-year limitation found in paragraph 20 of the same act (CL 1948, § 609.20 [Stat Ann § 27.612]).

Both in his answer to defendants' motion to dismiss, as well as here, plaintiff relies on his amended declaration as a whole. He does not elect as between counts. His suit still remains as a suit for damages "for injury to * * * property," relied upon in the declaration as a whole. It is barred by the statute of limitations.

For the above reasons I concur in affirming the order of the trial court dismissing the case.

KELLY, J., concurred with BOYLES, J.

BLACK, J., took no part in the decision of this case.